Pike *v.* Dyke.

PIKE *v.* DYKE.

<div style="float:right">2 213<br>96 195</div>

Where lots have been granted, designated by number, according to a plan referred to, which has resulted from an *actual* survey, the lines and corners made and fixed by that survey are to be respected, as determining the extent and bounds of the respective lots.

The rule that all the declarations of a party, or parts of an instrument, offered in evidence, are to be taken together, does not extend to the transactions of proprietors at different adjournments of the same meeting.

If at a proprietors' meeting a grant of land be made by vote to an individual, by which the estate passes, it is not competent for the proprietors at a subsequent adjournment to resume it. And when the grantee exhibits evidence of the vote on which his title depends, he does not thereby preclude himself from objecting to the admissibility of the doings of the same proprietors at an adjourned meeting, by which they have undertaken to vacate or modify the grant.

THIS was an action of trespass *quare clausum fregit,* for cutting down trees on the plaintiff's lot numbered *eleven,* in range *five east,* in the town of *Baldwin.*

At the trial, which was upon the general issue, the defendant admitted the plaintiff's title to lot numbered *eleven,* it having been drawn *January* 5, 1786, to the original right of *Charles Kilham;*—but he insisted that the land on which he entered was without the bounds of that lot, which, he contended, consisted of only one hundred acres.

The defendant exhibited, as chalk, an unauthenticated plan, purporting to be a plan of *Baldwin,* on which it appeared that in the *fifth,* and several other ranges of lots, the numbers began with *one,* and continued in regular series as far as *eleven,* and then followed number *twelve* and onward. The plaintiff

Pike v. Dyke.

contended that number *eleven* extended from *ten* to *twelve*, in which case it would be twice as large as the other lots—viz. 200 acres. The defendant contended that it extended only half the distance from *ten* to *twelve*, which would give it the size of the other lots, being 100 acres ;—the intermediate space being, as he said, an undrawn lot.

To shew that the piece of land in question was not an undrawn or proprietors' lot, the plaintiff read from the records of the proprietors of *Baldwin* the transactions of a committee of the proprietors *January* 31, 1797, appointed to ascertain what lots were yet unappropriated, and the doings of the proprietors upon the report of said committee, in which report no mention was made of lot numbered *eleven*, nor of any land adjoining it.

The plaintiff also read from the records the appointment and report of another committee to ascertain all the undivided lands, lotted or not lotted ; which report, accepted at a meeting *September* 11, 1805, specified several lots and parcels of land, but not the land in question.

The *defendant* then offered to read from the same records the transactions of the proprietors and their committee at an *adjournment* of the *same* last mentioned meeting, held *September* 14, 1808 after several intermediate adjournments; to shew that they had discovered and reported the land in question as undivided land, and to satisfy the jury that the *proprietors never designed* that the lot numbered *eleven* should include the whole intermediate tract between *ten* and *twelve*, and that in fact it *was not so included.* To this evidence the plaintiff objected, and the Judge who presided at the trial refused to admit it.

There was other testimony introduced to satisfy the jury as to the original location of the lot numbered *eleven ;* and the Judge left the cause to the jury upon the whole evidence,—instructing them that the determination of the cause depended entirely upon the original location of that lot, as laid down upon the face of the earth, prior to the drawing in 1786. If they were satisfied that the *locus in quo* was within the limits of that lot as located prior to 1786, they would find for the plaintiff,—otherwise, for the defendant ;—and they returned a verdict for the plaintiff, which was taken subject to the opinion of the

whole Court, whether the evidence offered and rejected ought to have been admitted.

*Long fellow and Greenleaf*, for the defendant.

The defendant was not a trespasser, unless the *locus in quo* was part of lot numbered *eleven*,—and the only question to the jury was, what were the bounds of that lot?

The object of the evidence offered was, not to *defeat* a grant, —though the proprietors might lawfully, by a subsequent act, declare a draft null, if made erroneously and improperly, the lands still remaining in the hands of the proprietors;—but it was to ascertain the *extent* of the grant; and this could not appear without recurrence to the records and plan. If the plaintiff had not read from the records, the defendant might,—not to defeat the grant,—but to ascertain *how much* was granted.

And this evidence was admissible. The plaintiff had introduced it, and could not therefore complain;—and the whole ought to be taken together. It was a record of the transactions at the same meeting—relating to the same subject matter —reported by the same committee—being a continued investigation of facts, and reported from time to time, as fast as they could be ascertained.

*Fessenden*, for the plaintiff.

The question is not upon the *effect* of the evidence offered, but upon its *competency*. It is a record of transactions *three years after* those read by the plaintiff, and thus not coming within the rule of taking all the declaration of the party together;— and it was twenty-two years *after* the original draft of the lots in 1786. It is at most only the declaration of a grantor, made after the grant; and its admission would be destructive to rights vested under the prior location. Upon the same principle *any* draft of lots might be vacated at an adjournment of the same meeting, though years afterwards.

As a *confession* of the grantors, the part read by the plaintiff was good evidence against them, as it went to shew the construction which they had given to their own grant;—but the part offered by the defendant related to *another* time, when the proprietors had *an interest* to narrow their grant. To suffer

this would be to permit a grantor to control the deed after he had parted with the fee. *Bartlett v. Delprat*, 4 *Mass.* 702. *Clark v. Wait*, 12 *Mass.* 439.   1 *Johns.* 159.

WESTON J. delivered the opinion of the Court as follows.

It is admitted that from the records of the *proprietors of Baldwin*, it would appear that on the fifth of *January*, 1786, lot numbered *eleven* in that township was drawn to the original right of *Charles Kilham*.   By these proceedings, the regularity of which is not questioned, a title to that lot passed to *Kilham*, to hold to him and his heirs in severalty, in the same manner as if a deed to that effect had been formally executed.   It is further admitted that the title to this lot, thus drawn, is now in the plaintiff.

The jury have found that the place, where the trespass was committed, was within the bounds of lot numbered *eleven*, as actually located upon the face of the earth prior to 1786. Whatever, by this location, was included in number *eleven*, passed by that designation ; as much as if the exterior bounds of the location had been specified with precision, and with reference to known existing monuments.   Where lots have been granted designated by number, according to a plan referred to, which has resulted from an actual survey, the lines and corners, made and fixed by that survey, have been uniformly respected in this State, as determining the extent and bounds of the respective lots.   It would be impossible to relax this rule, without producing the greatest confusion and uncertainty in almost every part of the country.

When an estate in lands has once been legally conveyed from one man to another, no declarations made or acts done by the grantor can impair or affect the interest vested in the grantee.   Of this description was the evidence offered and rejected of the transactions of the proprietors of *Baldwin* in 1808, relative to the land in question, twenty-two years after they had parted with their interest in lot number *eleven*.

But it is contended that the evidence was admissible, inasmuch as it exhibited the proceedings of an adjournment of the meeting held in 1805, the transactions of which had been adduced in evidence by the plaintiff.   It is a familiar and well

Pike *v.* Dyke.

settled principle of law, that if part of an instrument be read in evidence by one party, the other has a right to require that the whole shall be exhibited; and if the declarations of a party are adduced against him, he has thereby a right to prove all that he said at the same time, although operating in his favour. The claim of the defendant however, in regard to the testimony rejected, does not appear, upon any fair analogy, to fall within this principle. Proprietors of this description oftentimes transact their business by regular adjournments, from time to time, for a series of years. In the present case three years elapsed between the proceedings of the meeting adduced by the plaintiff, and those attempted to be connected with it by the defendant, as transacted at a continuation of the same meeting through several intermediate adjournments. These successive meetings may derive their efficacy by relation to the day of their commencement; and in legal estimation, with a view to the regularity of their organization, may be considered as one meeting; but a subject taken up and finished, in which the rights of third persons are concerned, is not liable to be affected by what may be done at an adjournment on another day, which may be years afterwards. If on one of these days a grant be made of land by vote to an individual, by which the estate passes, it is not competent for the proprietors at a subsequent adjournment to resume it. And when the grantee exhibits evidence of the vote, upon which his title depends, he does not thereby preclude himself from objecting to the admissibility of the doings of the same proprietors at an adjourned meeting, by which they may have undertaken to vacate or modify the grant.

We are of opinion that the evidence of the transactions of the proprietors offered by the defendant, was rightfully rejected; and that there must be

*Judgment on the verdict.*

*Note.* The Chief Justice, having been of counsel, did not sit in this cause.