Edward F. Cahill
vs.     Eq. No. 11765.
Slaimen N. Slaimen, et al.

October 5, 1933.

CHURCHILL, J. Heard on bill, answer and proof.

The bill is to enjoin respondents from trespassing upon land of the complainant and to quiet title.

The land in question lies in the City of Providence between South Main Street and South Water Street. The respondent Jose C. Silva is vested with the legal title to the lot of land immediately to the north of the complainant's lot. It is undisputed that the respondent Slaimen has a beneficial interest therein.

The main issue is in respect to a gangway alleged to be 12 feet wide and to run between South Main and South Water Streets.

The land of the complainant is a portion of land owned by Philip Tillinghast, who died in 1732. In 1707, The Colonial General Assembly granted authority to the towns of the colony "to settle such coves, creeks, rivers, waters, banks bordering upon their respective townships, as they shall think fit for the promotion of their several towns and townships, by building houses, and warehouses, wharfs, laying out lots, or any other improvements, &c., as the body of freeholders and freemen of each town shall see cause for, or the major part of them, for their most benefit, not prejudicing any particular person in their proper original grants or purchases upon any the aforesaid harbors, coves, creeks, &c., which we doubt not but will much promote the interest of her Majesty and the good of her good subjects in said colony, for the promoting of trade and navigation." IV R. I. Colonial Records 24.

In 1746 Proprietors of common land in the town of Providence attempted to lay out a gangway 12 feet wide over the Philip Tillinghast land and running between what was then known as Providence Towne Street (now South Main Street) and South Water Street. A plat filed in 1746 shows a gangway running between lot 19 and the house of Charles Tillinghast. Philip Tillinghast acquired his land in 1708 by a vote of the Proprietors and, therefore, under the saving clause in the resolution of 1707, the act of the Proprietors in 1746 was ineffectual, but in any event the Proprietors, having passed title to Philip Tillinghast, could not subsequently nullify the grant by laying out a gangway in the manner proposed.

*Pike* vs. *Dyke*, 2 Me. 213.

In conformity with this conclusion is the attitude of the City of Providence. The evidence is undisputed that this alleged gangway has never been claimed by the city as a street or public gangway and on none of the city plats has it ever appeared as a street or way.

Further, it is undisputed that at the death of Philip Tillinghast in 1732, a warehouse stood on the land in question and occupied a space across the entire width of the alleged gangway and that as late as 1832 the warehouse was in existence in the same location.

I rule, therefore, that no gangway, public or private, was created by the Act of the Proprietors in 1746.

The main contention of the respondent is that the gangway came into being by dedication in 1839 on the partition of land between James Burgess and Peter Pratt, and a plat by Benoni Lockwood, made and filed in connection with the partition, shows a 12 foot gangway. The deed of partition executed by Thomas Burgess and Peter Pratt provides as follows:

"It is mutually covenanted and agreed by and between the parties to this deed respectively, their re-

spective heirs and assigns forever, that the irregular twelve foot gangway laid down on said plat between Lot No. 1 and Lot No. 2 and the well and pump on Lot No. 1 shall be owned and remain in common as a gangway and well for the common use and benefit of both parties, their heirs and assigns forever, and shall be kept in good repair at the equal expense of both the parties aforesaid, their heirs and assigns respectively forever."

This gangway, so delineated by the surveyor and referred to in the deed, by some mistake was not laid out over the land partitioned but was located across land which was entirely outside of the lot partitioned. An experienced title searcher demonstrated this to be a fact beyond successful attack. The Court therefore finds that the 12-foot gangway was as described and laid out on the Lockwood plat, and in the deed of partition of November 9, 1839, was not laid out over land embraced in the partition deed.

It is therefore clear that no right of way or easement or public gangway was created by the deed and plat of 1839, and I so find and rule.

The respondents further argue that, although conceding this, the owners of the land over which the gangway extends, have dedicated the land as a public way by long acquiescence in its use by the public.

The history of the location and the physical facts relating to the lay-out since 1839 indicate that no such public way has come into being or existed since that time.

In 1848 South Water Street was widened by the City of Providence and the plat made by the city for that purpose shows no gangway running through the location from South Water Street to South Main Street, and the plat filed at that time shows no break in the curbstone running along the South Main Street boundary

of the property. South Main Street was widened in 1901 and the city plat prepared for this occasion discloses a building and two rail fences running across the land now owned by the complainant and across the lines of the alleged gangway.

The testimony further showed that for forty years prior to the time when Cahill acquired title to the lots in 1930, the entire level of the lot on its easterly or South Main Street boundary was some three feet lower than the level of South Main Street. In addition to this, it was shown that a rail fence was in existence along such boundary line prior to 1922 and extending across the entire width of the lot on South Main Street, and this fence was replaced in 1922 by a board fence and later by another rail fence which is still in existence.

The fence along the South Water Street boundary of the lot has been maintained for more than ten years. It is quite manifest that the use by vehicles of any portion of the land where the alleged gangway is claimed to exist has been impracticable for a period beyond the memory of living witnesses and warrants the Court in finding on the weight of the testimony that no such way was ever used by vehicles.

Public Laws, Chap. 976, passed April 12, 1872, (Gen. Laws 1923, Chap. 800, Sec. 5) provides that no footway, except claimed in connection with a right to pass with carriages, shall be acquired by prescription or adverse use for any length of time.

If it be assumed that this statute does not include the creation of a public way by implied dedication based on acquiescence in long user by the public, it is quite clear that the testimony in this case does not afford a sufficient foundation upon which to rest such a way.

*State* vs. *Coy*, 44 R. I. 357;

*Daniels* vs. *Almy*, 18 R. I. 244;

*Hughes* vs. *Prov. & Worc. R. R.*, 2 R. I. 493.

There is some testimony that at times workmen employed in adjacent coal yards crossed the lot going from South Water Street to South Main Street, or in the opposite direction, as a short way to their various destinations, and that other persons also at times made the same use of the area, but from the evidence it is also plain that in order to so use the area, it was necessary to go over or through fences on South Main and South Water Streets. There was no proof that a physically delineated way was ever in existence or that the public used any such way for a long period of time, and the existence of a fence on each street conclusively rebuts any inference of consent to use by the owner.

I find and rule that no way by implied dedication existed on the land as it came into the hands of complainants or has come into existence since.

On the Latham survey made in 1921 (Comp. Ex. 1), there appears a lot described as Lot C, which area is included in the complainant's land.

Philip Tillinghast owned the land of which Lot C was a part. In his will he provided that "the land betwixt my now dwelling house and the house where my said son Charles liveth, shall lie open for the conveniency of both the said houses from the Towne Street so far westward as my warehouse forever." The house in which Charles then lived was devised to Charles and out of the land devised to Charles came the land which is now in Silva and Slaimen.

It is undisputed that both houses have long since disappeared. From the language of the will the Court rules that an easement was created the existence of which depended upon the existence of the two houses and that with the disappearance of the houses the easement was extinguished.

There remains to be considered the use of the gangway shown on the Latham plat under the name "gangway," running from South Main Street and bounded northerly and easterly by land of the respondents Silva and Slaimen.

An injunction is sought against the respondents to prevent what is alleged to be the improper use of the gangway.

It appears that the respondent Slaimen has used this gangway, or allowed his tenants and customers to use it as a parking place for automobiles and for relatively long periods of time. Such use is unreasonable and an injunction should issue to prevent such practices. The exact extent of relief may be settled on the hearing for final decree.

The decree may also include the provision that Slaimen repay to Cahill the cost of repairs to the fence on South Water Street, amounting to $26.54. These repairs were made necessary by reason of the fact that Slaiman tore down the gate or fence under his claim that a gangway existed across the complainant's lot.

A decree may be entered in accordance with the findings of fact and rulings of law in this respect.

For complainant: John A. Tillinghast.

For respondent: Michael Pedro, Justin McCarthy, Tillinghast & Collins.