JOHN EVERETT V. LEVI H. LUSK.

1. FINDINGS, INSUFFICIENT; *Error.* Where a case is tried by the court without a jury, and the findings of the court are not sufficient to sustain a judgment, it is error for the court to render judgment upon such findings, against a party, over his objections and exceptions.

2. EJECTMENT; *Extent of Recovery.* In an action in the nature of ejectment the plaintiff may recover any part or portion of the land which he claims, the verdict and judgment corresponding with the proof in the case.

*Error from Barton District Court.*

EJECTMENT, brought by *Everett.* The facts sufficiently appear in the opinion. Second trial at September Term 1876. Judgment in favor of defendant *Lusk*, and plaintiff brings the case here.

*Clayton & Clayton,* for plaintiff.

The opinion of the court was delivered by

VALENTINE, J.: This was an action in the nature of ejectment, brought to recover a certain strip of land. It is admitted by the parties that the plaintiff owns the N.E. ¼ of section 9, in township 19 south, of range 14 west, in Barton county, and that the defendant owns the N.W. ¼ of section 10 in said township and range. The strip of land in controversy is a part of either one or the other of said quarter-sections, or belongs partly to one and partly to the other. It lies along the common boundary between them; and to which it belongs, or how much to one, and how much to the other, are the only questions in the case. It will therefore be seen that the only question in the case is one with respect to the boundary-line between said quarter-sections. This question depends upon these two other questions, to-wit: Where is the exact location of the quarter-section corner between sections 9 and 10? and where is the exact location of the section corner between sections 3, 4, 9 and 10? All other

questions that may be involved in the case are only inci-
dental and subsidiary. The case was tried twice in the court
below—each time by the court without a jury. On the
second trial, of which we shall more particularly speak, a
vast amount of evidence was introduced, all of which evi-
dence is brought to this court; and upon this evidence the
court below made certain findings, and then rendered judg-
ment upon these findings in favor of the defendant and
against the plaintiff, and plaintiff now brings the case to this
court. The record of said findings and judgment, as made
and rendered at said second trial, reads as follows:

"Be it remembered, that on the 11th day of September
1876, it being a regular term of this court, came the parties
herein, the plaintiff by G. W. Nimocks, S. J. Day, and Joshua
Clayton, his attorneys, and the defendant in person, and by
C. P. Townsley, his attorney; and thereupon this cause came
on for trial, and a jury having been waived by the parties,
said cause was tried by the court. And the court having
heard the evidence and the arguments of counsel, and being
fully advised in the premises, doth find the facts and con-
clusions of law to be as set forth in the opinion rendered and
filed by the court on this trial of this cause, which opinion is
in the words and figures following, to-wit:

"After a careful reëxamination of the legal points governing
this case, I am satisfied with the law as set forth in my opin-
ion filed on the former trial, which was as follows: 'The
principles of law are—1st, section and quarter-section cor-
ners, as established by the government survey, must stand as
the true corners; 2d, must be reëstablished at the identical
spot where the original corner was located by the government;
3d, when this cannot be done, then they must be established
according to the field-notes.' Then, as coöperative principles
of law, we state that the legal and proper evidence by which
this court must be governed may be classed and ranked—1st,
the original corner-stone or stake as established by the gov-
ernment is the primary and best evidence of the existence of
the corner; 2d, in the absence of the stone or stake, etc., the
next best evidence is the witnesses, or the juts, or witness-
trees or objects; 3d, in the absence of corner-stones, or wit-
ness objects, then the next best evidence is oral testimony of
parties who can testify from memory as to the location or
spot at which the corner was located; 4th, and last, in the

absence of the corner indications, or witness objects, or any credible witness who can testify as to where the corner-stone was, then the next best evidence is the field-notes; and a presumption of law then becomes operative, viz., that in the absence of any evidence under the 1st, 2d, or 3d classes, then the corner is presumed by law to be at the distance indicated by the field-notes.

"The evidence introduced during the last trial of this cause differed somewhat from that introduced on the first trial; but conceding that the evidence establishes a government corner at some point within a circle of 20 feet at S. E. of sec. 8, t. 19, r. 14, yet the lost corner at S. E. of 9, or S. W. of 10, was not restored or reset by such government corner at the S. E. of 8. In fact, the exact locality of that government corner at S. E. of 8 is not established by the evidence. It has been established at some point within a circle of 20 feet, but whether at the point indicated by Howard, or Heizer, or Chamberlain, in their respective surveys, I am unable from the evidence to decide. Conceding that surveys had been made from S. E. of 8, to S. E. of 9, then there would necessarily be the same variation at the latter point; and from the evidence I could only find that the corner at the S. E. of 9, was somewhere within a radius of 20 feet. The plaintiff in his action in ejectment claims the land to a certain cornerstone established by surveyor Chamberlain. He must establish his legal right to all of the land lying west of the line as indicated by Chamberlain's corners, or he must fail in the action. This court from the evidence could find that the exact location of the original government corner at the S. E. of 8 is within a circle of 20 feet, which circle embraces the three corners of three different surveyors at that point, and might also find that the exact location of the original corner at S. W. of 10 is somewhere within 20 feet of the point as claimed by plaintiff; but such a finding, and a judgment based upon such finding, could not be made effective. If a writ of restitution was placed in the hands of the officer he could execute the same by saying to the plaintiff, 'I restore to you about so much land, including all of east-half of section 9, west of some unascertained point within a circle of 20 feet.' Nothing could be accomplished by such a decree, except to make confusion more confounded. The survey as made by Mr. Chamberlain makes an equitable division of the land, and gives symmetry to the sections. These would be weighty reasons in an equity proceeding; but all of the

reasons of this kind that could be suggested, could not make a legal title. It is therefore considered, ordered, and adjudged, that the defendant go hence without day, and that he have and recover of and from the plaintiff his costs in this behalf expended."

Now the law as enunciated by the court below in the foregoing findings and conclusions, with one or two fatal exceptions which we shall hereafter mention, we think is correct. But the court has failed to fully find the facts of the case. Who can tell from the foregoing findings where the boundary-line between the N.E. ¼ of section 9 and the N.W. ¼ of section 10, is? or who can tell where the quarter-section corner between sections 9 and 10, or the section corner between sections 3, 4, 9 and 10, is located? Neither said boundary-line, nor either of said corners, is mentioned in said findings. And yet the location of this boundary-line, and the location of these corners, are really the only contested questions in the case. Neither can any one tell from said findings how much of said disputed strip belongs to the plaintiff, and how much of the same belongs to the defendant. Indeed, from anything appearing in the findings, the plaintiff may own the whole of said strip. Now such defective findings will hardly sustain a judgment, and particularly a judgment against the plaintiff; and it was error for the court below to render the judgment it did render on such findings, over the objections and exceptions of the plaintiff. Such judgment could be sustained only upon a finding or findings establishing in effect that *none* of the land in controversy belongs to the plaintiff. Now the findings in this case do not establish any such thing. On the contrary, they may all be strictly true, and yet the plaintiff may be the owner of every foot of the land in controversy. And according to said findings, and the evidence in the case, the plaintiff unquestionably does own some of the land in controversy. But just how much of it he owns, we cannot tell. His claim to said strip is sustained by a survey made by Charles Chamberlain, the county surveyor of Barton county. It would seem from the evidence in the case, that the corners between sections 9 and 10, as origi-

nally established by the U. S. government survey, are now so obliterated and destroyed as to be wholly undiscernible and undiscoverable. And probably no evidence can now be found to show precisely where they were originally located. If any such evidence could be found, of course it would govern. Even if the evidence, with respect to any one of such corners should show merely that it was located within any given circle of definite location, the corner should be reëstablished within such circle. But in all cases, where the evidence does not show definitely and precisely where the original corner was established, such corner must be reëstablished by appropriate surveys. The county surveyor in this case reëstablished the missing corners between sections 9 and 10. Probably he did not place them far out of the way. But his survey was not as extensive as it should have been under the circumstances in order to insure accuracy to a reasonable certainty. He should have reëstablished said missing corners from all the nearest known original corners, in all directions, following section lines. And where a government survey has been made, as the government survey in this case was made, (that is, under the instructions of the commissioner of the general land-office to the surveyor general, dated Feb. 22d 1855 and June 1864, and establishing the quarter-section corners alternately with the section corners,) quarter-section corners as well as section corners are to be considered in reëstablishing lost corners. According to the survey made by the county surveyor, the defendant was in possession of a strip of land belonging to the plaintiff, 33 feet wide at the north end, and 103 feet wide at the south end, and extending all the way along the east side of the said N.E. ¼ of said section 9. Now the court below says in its findings, that it "might also find that the exact location of the original corner at s.w. of 10 is somewhere within 20 feet of the point as claimed by plaintiff." Now suppose we consider the southwest corner of section 10 as reëstablished 20 feet west of where the plaintiff claims that it should be, and the northwest corner of section 10 as reëstablished 33 feet west of

where the plaintiff claims that it should be, and the quarter-section corner between sections 9 and 10 as reëstablished equidistant and on a straight line between said S.W. and N.W. corners of section 10, and still the plaintiff would be entitled to a portion of said strip of land 76½ feet wide at the south end and running to a point at the north end. The court below seems to have decided this case upon the erroneous theory that the plaintiff must recover all he claimed, or nothing. The court in its findings says:

"The plaintiff in his action in ejectment claims the land to a certain corner-stone established by surveyor Chamberlain. He must establish his legal right to all of the land lying west of the line as indicated by Chamberlain's corners, or he must fail in the action. This court * * * might also find that the exact location of the original corner at S.W. of 10 is somewhere within twenty feet of the point as claimed by plaintiff; but such a finding, and a judgment based upon such finding, could not be made effective. If a writ of restitution was placed in the hands of the officer he could execute the same by saying to plaintiff, 'I restore to you about so much land, including all of east-half of section 9, west of some unascertained point within a circle of 20 feet.' Nothing could be accomplished by such a decree, except to make confusion more confounded."

We think the court below committed error in holding that the plaintiff must recover all the land he claimed, or nothing. The plaintiff may in an action of this kind recover any part or portion of what he claims. (*Benz v. Hines*, 3 Kas. 390; *McArthur v. Porter*, 6 Peters, 205; Tyler on Ejectment, 580; 5 U. S. Dig., first series, 203 to 213, and cases there cited.) The verdict and judgment should in all cases correspond with the proof; and the plaintiff should be allowed in all cases to recover just so much of what he claims as the proof shows that he is entitled to recover. Of course, he would not be allowed to recover anything not claimed by him.

The judgment of the court below will be reversed, and cause remanded for a new trial.

All the Justices concurring.