The opinion of the court was delivered by
Valentine, J.:
This was an action in the nature of ejectment, brought by Nelson A. Reicheneker against Nicholas McAlpine, Edward O’Brien, and Sarah A. Henry, to recover a certain strip of land, 13J chains in length and 150 feet in breadth, in Wyandotte county, Kansas. The real question in the case is, the proper location of a boundary line between the premises of the respective parties. The plaintiff owns the land on the south side of such boundary line, and the defendants own the land on the north side thereof; and it is claimed by the plaintiff that the defendants have taken possession of a strip of land 150 feet wide, immediately south of the true boundary line between the property of the plaintiff and the defendants, respectively.
Originally, the entire property belonged to Matthew Walker. He died, and the property descended to his widow, Lydia B. Walker, and to his sevén children, Thomas G., Adaline, Sarah L., Malcolm, Percy L., Clarence, and Lilian. Afterward, and in 1868, the property was partitioned between the children, the widow receiving property elsewhere. The property is bounded as follows: On the north by the north half of section thirty-four, township ten, range twenty-five; on the east by the Missouri river; on the south by land belonging *261 to the Union Pacific railway company, and designated as “the Union Pacific railway land;” and on the west by the Missouri River railroad. The land was divided into seven lots or portions, and one lot given to each of the children. The plaintiff purchased the two lots or subdivisions constituting the southern portion of the land, and the defendants purchased the five lots or subdivisions constituting the northern^ portion of the land; and the only question presented in this-ease is, where is the true boundary line between the land of the-plaintiff and that of the defendants?
On the trial in the court below the plaintiff introduced in evidence the partition proceedings, including the report of' the commissioners appointed to partition the property, and-including a statement of what they had done, and also a map. showing what they had done, and the order of the court, approving and confirming the proceedings and report of the-commissioners, which order reads as follows:
“ It is ordered that said proceedings and report be and the same are hereby approved and confirmed, and that said parties hold in severalty the parts and premises so set off and assigned to each respectively.”
The plaintiff also introduced in evidence his title deeds. The report of the commissioners shows that the plaintiff’s, land extends from the Union Pacific railway land northwardly, along the line of the Missouri River railroad! 22 chains. There is nothing in the report of the commissioners which shows that the length of the plaintiff’s land is on a straight line running due north and south; but it would be something less than it is on the line following the Missouri River railroad. The plaintiff also introduced evidence tending to show that by running a line northwardly from the Union Pacific railway lands the distance designated by the report of the commissioners, it would show that the defendants had passed too far south and were in possession of a certain strip of land of the plaintiff’s, next to the Missouri River railroad, 300 feet long by 108 feet wide; and another strip of land belonging to the plaintiff, extending on east *262 from the first-mentioned strip to the Missouri river, being 10 feet wide. The plaintiff then, rested.
Said report of the commissioners appointed to partition the land, shows that the defendants’ land should be 25^Tfw chains in width, north and south. It was also admitted that the defendants owned all the land which belonged to the estate of Matthew Walker, north of the plaintiff’s land. It was also shown that there were no monuments or anything else, except the report of the commissioners, designating the boundary lines between the several allotments to the respective heirs of Matthew Walker; and there never had been anything else to show such boundary lines. The defendants then offered to prove that by measuring from the northern boundary of their land, (which is a portion of the northern boundary of the south half of section thirty-four, township ten, range twenty-five,) southwardly, for the distance to which their land should extend south, according to the report of the partition commissioners, such measurement would show that they were not in possession of any more land than belonged to them; but the plaintiff objected to the introduction of the evidence, upon the ground that it would impeach the verity of the partition proceedings; and the court below sustained the objection, and excluded the evidence. Upon the admission or exclusion of this evidence the whole case turned; and because of the exclusion of this evidence, judgment was rendered in favor of the plaintiff and against the defendants for the strip of land in controversy.
We think the court below erred. The evidence offered to be introduced by the defendants would no more impeach the verity of the partition proceedings than the evidence actually introduced by the plaintiff. The fact was, that the entire tract of land lacked about two chains of being as long, north and south, as the report of the commissioners made it; that while a measurement from the southern boundary of the land, northwardly, wouldshow that the defendants werein possession of a narrow strip of the plaintiff’s land, yet, if the measurement were from the northern boundary of the land, south *263 wardly, it would show that the defendants were not in possession of any of the plaintiff’s land, and were not in possession even of all they were entitled to.
Suppose that the defendants had introduced their evidence first, then would the plaintiff have been debarred from introducing the evidence which he in fact introduced, because it would have impeached the verity of the partition proceedings? We think not; but we think there would have been just as much reason for excluding his evidence as there was for excluding the defendants’ evidence. It must be remembered that the partitioning of the property was all done at the same time; that the report of the commissioners was all made at the same time, and that the approval and confirmation of the report were all done at the same time; and when we speak of the report of the commissioners, we do not simply mean- what they said in words, but we also mean to include the map which they filed with their report, and which they made a part thereof. We have already given the words of the approval and confirmation of the report; and by it no one of the allottees has any precedence over any of the others. These proceedings are unlike a case where a deed for a certain portion of land is made to one person, designating specific boundaries of the land conveyed, and afterward a deed is made to still another person for another portion of the land, designating other specific boundaries, but the boundaries of the two portions of the iand overlapping each other so as to appear to convey a strip of the land to both persons; for the title in such a case for all of the portion of land first conveyed would vest in the first grantee before the second deed was executed, and the grantor would have no power to again convey any part of the property which he had previously conveyed to the first grantee. In this case all the parties are claiming under the same instrument, the same proceedings, the same decree, and the titles of the allottees under the partition proceedings all vested at one and the same time and by the same instrument. The right of everyone to his full quota of land is therefore equal to *264 the right of every other one. It is evident that the partition proceeding are erroneous; for they apparently show that the ' land partitioned is about two chains longer, north and south, than it actually is; but it must not be supposed that this mistake or error occurred solely in the measurement of any one particular allotment. It should be supposed that the error occurred during the measurement of the entire length of the-entire tract of land from north to south; and when the land is ascertained to be about, two chains shorter than the partition proceedings show it to be, each allotment should bear its-proportionate share of the loss. This would certainly be equitable, and it would certainly be inequitable for one of theallottees to lose all, and the others to lose nothing.
Counsel for plaintiffs in error (defendants below) lays down certain propositions, which he claims have been settled by the universal current of the decisions. The propositions are as follows:
“First: That if the monuments or marks on the ground for the corners of the several allotments can be found, such marks or monuments must govern, and distances and bearings must be disregarded.
“Second: If the monuments or marks on the ground are-lost or obliterated, parol evidence may be introduced in connection with the record to show their location.
“Third: If no monuments were set, except theoretically on paper, the proper location of those monuments will be determined by pro-rating the distances as given in the records, according to the length of frontage of the several allotments.
“Fourth: If the actual computed sum of the length of the-several allotments as given exceed the length of the tract partitioned, it will be construed that the decree means, that upon the hypothesis that the entire length of the whole tract is-as stated, then the length of each assignment shall be as given ‘t but if it be less, the assignments of allotments must lose in like proportion.”
We think these propositions are correct, and we decide this-case upon the theory of their correctness. (See authorities cited in brief of counsel for plaintiffs in error.)
The errors of the court below in excluding evidence were *265 properly preserved by exceptions, by motion for a new trial, etc.
The judgment of the court below will be reversed, and the cause remanded for a new trial.
All the Justices concurring.