Shaffer v. Weech.

L. N. Shaffer, *et al.*, v. Daniel Weech.

1. Public Road, *Where Established*. Where the map and field-notes of the surveyor who assisted in locating a public county road, which was afterward established and opened, show that the road was not located at precisely the same place where in fact it was originally located by the road viewers and opened by the road overseer, *held*, that the road is nevertheless established where it was originally located and opened.

2. ———— *Surveyor's Map and Notes.* The map and field-notes of the surveyor in such a case are only *prima facie* evidence of where the road was originally located, and are not conclusive.

3. Petition *for Public Road; Jurisdiction.* Before a survey and review of a public road can be had under § 8 of the act of 1874 relating to roads and highways, (Comp. Laws of 1879, ch. 89, § 8,) a petition of twelve householders of the county must be presented to the county board for that purpose. (Comp. Laws of 1879, ch. 89, § 1.) Such a petition is jurisdictional, and without it no valid proceedings can be had.

*Error from Linn District Court.*

Action brought by *Weech* against *Simpson* and two others, to recover the value of 154 rods of hedge alleged to have been cut down and destroyed by the defendants on the plaintiff's land, and for other incidental and resulting injuries. August 8, 1883, judgment that plaintiff recover from each defendant $1, and his costs. The defendants bring the case to this court. The opinion states the facts.

*James D. Snoddy,* for plaintiffs in error Shaffer and Simpson.

*W. R. Biddle,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in the district court of Linn county by Daniel Weech against John Simpson, Charles Dickens and L. N. Shaffer, to recover the value of 154 rods of hedge alleged to have been cut down and destroyed by the defendants on the plaintiff's land, and for other incidental and resulting injuries. The defendants answered that the plaintiff's hedge was situated in a public highway, in road district No. 3, in Lincoln township, in said county; that L. N. Shaffer was the trustee of said township; that John Simpson was the road overseer of said district; that Charles Dickens acted under their orders; and that they, as officers, cut down the hedge and removed it for the reason that it was an obstruction in the aforesaid public highway. The plaintiff replied, setting up, first, a general denial; and second, that the land upon which the hedge was standing had been inclosed for more than ten years, and had not been used by the public for more than twenty years. Among the admitted facts are the following: The land upon which the hedge was standing, as well as the hedge itself, belonged to the plaintiff; and the defendants cut down the hedge and left it lying upon the plaintiff's land; and the public highway aforesaid was a public county road located in November, 1870, and established in January, 1871, and located and established in the vicinity of the place where the plaintiff's hedge was standing when it was destroyed. The principal disputed question of fact is, whether the land upon which the hedge was standing when it was destroyed was in fact a part of the aforesaid road, or not. In other words, the main question litigated in the court below was, whether this public road was so located as to take in the land upon which the plaintiff's hedge was standing at the time it was destroyed, or whether the road was located just south of the hedge. The plaintiff claims that the hedge was not in the road, while the defendants claim that it was. Upon this and the other questions involved in the case the jury before whom the case was tried

found in favor of the plaintiff and against the defendants, and the court below rendered judgment accordingly; and of this judgment the defendants, as plaintiffs in error, now complain.

The evidence in the case tends to show, among other things, as follows: The aforesaid public road was located by the viewers on November 28th to 30th, 1870, and was finally established by the county board on January 5, 1871. It was 56 feet wide, and was located at or near the south line of the plaintiff's land, and at or near the north line of the lands now belonging to the defendants Simpson and Dickens. Just where it was located, as before stated, is the principal question in dispute. The plaintiff claims that it was located south of where his hedge stood when it was destroyed, while the defendants claim that it was so located as to take in the land upon which the hedge stood when it was destroyed. There were rocks or monuments along the line of this road when it was located; and from the parol evidence concerning these rocks and monuments and the actual location of the road, it would seem that the road was actually located where the plaintiff claims that it was, but from the map and field-notes of the surveyor and supplemental evidence it would seem that the road was located where the defendants claim that it was. After the location and establishment of the road it was actually opened by the road overseer upon the line where the plaintiff claims that it was originally located, and has since been actually traveled and improved on that line. Shortly after the establishment of the road the plaintiff planted the hedge in controversy, where it stood when it was destroyed; and shortly after he planted his hedge another hedge was planted, just fifty-six feet south of the plaintiff's hedge, and on the land now owned by the defendant Dickens, leaving fifty-six feet between the two hedges for the road. Culverts were also built by the road overseers along the line of this road, and about midway between the two hedges. The fence on Simpson's land was also built to correspond with the other fences, leaving fifty-six feet for the road just where the plain-

tiff claims that it was originally located. The road as thus left and as it was originally opened and improved by the road overseers was traveled for several years and down to the time when the defendants destroyed the plaintiff's hedge, just where the plaintiff claims that it was originally located, and no question was raised with regard to its location until a short time prior to the time when the hedge was destroyed. The hedge was destroyed on January 29, 1883. It will be seen from the evidence that if the map and field-notes of the survey of the road, as made at the time when the road was originally surveyed and located, are to be taken as conclusive evidence of the place where the road was originally located, then the verdict of the jury might have been in favor of the defendants; but if such map and field-notes are not to be taken as conclusive evidence of such fact, then upon the other evidence the verdict of the jury that was actually rendered in favor of the plaintiff may be sustained and upheld. Upon this subject the court below instructed the jury as follows:

"The monuments observed and lines actually run by the surveyor in surveying the road, and the laying out and viewing the line of road on the ground where it is laid, always prevails in determining the location of the road, provided the road is actually opened on that line. The notes of survey and the plat returned by the surveyor are matters of description, which serve to assist in determining the place where the road is laid, but they are not conclusive. . . . Wherever you find from the evidence that they (the surveyor, chainmen, viewers, etc.) actually surveyed and located this road upon the ground, if it was afterwards opened by the road overseer, will be the road for the purposes of this case, whether it was laid upon the township line, or not."

The township line above mentioned is the dividing line between the plaintiff's land and the defendant Dickens's land, and the north line of the defendant Simpson's land and the line on which it is claimed by the defendants that the road was located. There is probably a controversy between the plaintiff and the defendants, both as to where the road is located and as to where the township line is located, but for

the purposes of this case we shall assume that the township line is located where the defendants claim that it is. The defendants also claim that the road was located upon the township line. But the plaintiff, however, claims that if the township line is located where the defendants claim that it is, then that the road was not located upon the township line, but was located a few feet further south, and entirely south of his hedge. We perceive no error in the fore-

1. Public road, where established.

going instruction. (*Hiner v. The People*, 34 Ill. 297; *Beckwith v. Beckwith*, 22 Ohio St. 180.) See also the following cases, as tending to support the principles enunciated in the foregoing instruction: *Everett v. Lusk*, 19 Kas. 195, 199; *McAlpine v. Reicheneker*, 27 id. 257; *Tarpenning v. Cannon*, 28 id. 665; *Twogood v. Hoyt*, 42 Mich. 609; *Cullacott v. C. G. & S. Mining Co.*, 6 Pac. Rep. 211; *Turnbull v. Schroeder*, 29 Minn. 49; *Johnson v. Preston*, 9 Neb. 474; *Penry v. Richards*, 52 Cal. 496; *Pike v. Dyke*, 2 Me. 213; *Brown v. Gay*, 3 id. 126; *Williams v. Spaulding*, 29 Me. 112; *Marsh v. Mitchell*, 25 Wis. 706; *Fleischfresser v. Schmidt*, 41 id. 223; *Jackson v. Cole*, 16 Johns. 257. The map and field-notes of the surveyor, purporting to show where the road was originally surveyed and located, do not constitute the fact of the survey, nor the fact of the location, but are merely statements by the surveyor with regard to such facts. A surveyor in such a case has nothing to do with determining where the road shall be located. This is done by the viewers alone. They view the ground and determine where the surveyor shall make his surveys and where the road shall be located; and the surveyor's map and field-notes are only statements made by him, as to where the survey was made and where the road was located; and are at best only evidence of such facts; and, so far as we are informed, such evidence

2. Surveyor's map and notes, as evidence.

has never been held to be conclusive, but at most only *prima facie*, and while it is controlling in the absence of other and more satisfactory evidence, yet it must always give way when the real facts as they actually occurred are shown to be in conflict with it.

When the real facts as to where the road was actually surveyed and located are shown by other and better evidence, the map and field-notes can no longer control. As stated by many courts, monuments will control courses and distances, and the existence and location of monuments and lines may be proved and determined like other facts. Even where the monuments have been obliterated, lost or destroyed, their former existence and location may be shown by the parol testimony of witnesses who have knowledge of their former existence and location.

We suppose no one will claim that the map and field-notes of the surveyor amount to a judicial determination by him as to where the road was originally located, for a surveyor, instead of acting as a court or a judicial tribunal in the location of a road, acts merely as the servant of the road viewers, and the road viewers locate the road where it is actually located, and not where the map and field-notes may happen to show that it was surveyed or located. Surveys are always inaccurate, and this inaccuracy arises partly from the imperfection of instruments and largely from the natural infirmities inherent in all men, which even the most skillful surveyors and chainmen cannot wholly overcome, and also largely from negligence and carelessness. No two surveys are ever alike; and while the map and field-notes of a survey may purport to show the exact elements of the survey in all their details and particulars, yet they never do so and never can. Hence the necessity for relying upon the actual survey as made upon the ground, and not conclusively upon the map and field-notes of such survey. When the road viewers, who locate the road, assess the damages allowed to the owners of the land through which the road is located, they do so with reference to the actual location of the road, and not with reference to where the surveyor's field-notes and map may happen to show that the road was located. Also, when the road is laid out and established, the cost of opening the road, the cost of grading, and the cost of building bridges, culverts, etc., indeed all the costs of making the road good for travel, are estimated with reference to

where the road is actually located, and not with reference to where the map and field-notes of the surveyor may happen to show it was located.

In the present case it appears that there was a deflection in the line of the road at the place where it crosses Middle creek, and this deflection was for the purpose of obtaining a good crossing. Now suppose that upon a re-survey of the road it should be found that the distance from the starting-point to Middle creek falls short or overruns a few rods the distance shown by the map and field-notes of the surveyor who first surveyed the road, and that for this reason the aforesaid deflection will not touch the intended crossing at Middle creek if the map and field-notes of the original survey are to govern: will it be claimed that the actual crossing at Middle creek must be changed so as to make it correspond with the crossing as it would be if the courses and distances laid down in the map and field-notes of the original survey are to govern? And will it be claimed that the actual crossing shall no longer be where it was actually designated by the road viewers? Also, if changes are to be made in the road so as to make its location in the future correspond precisely with the location as shown by the *map and field-notes* of the original survey, such change might require the removal of fences, houses, or barns, or other valuable buildings, or the filling-up of cisterns, wells, cellars, or drains, to the great injury of the land-owners, and injuries for which they have received no compensation, and injuries for which they could not have received any compensation at the time when the road was originally established; and this for the reason that the road was not originally located or established precisely upon the line shown by the map and field-notes of the original survey. Upon reason and authority, we cannot consider the road as established upon any other line than the one where it was in fact located by the road viewers, and we cannot consider the road as necessarily established at the place where the map and field-notes of the original survey may happen to show that it was located.

The defendants, plaintiffs in error, however, claim that the court below erred in excluding certain evidence. This evidence included certain records of certain surveys, made long after the plaintiff's hedge was destroyed, and some considerable time after this suit was commenced, and probably for the purpose of making evidence for this suit. We shall discuss only one of these surveys, for if the record of it is not competent evidence, then the record of the other is certainly not. This survey was intended to be made under § 8 of the act of 1874, relating to roads and highways, (Comp. Laws of 1879, ch. 89, § 8;) but we do not think that the proceedings had preliminary to such survey were sufficiently regular to make either the survey or the record thereof of any validity. Said § 8 provides, among other things, as follows:

"SEC. 8. When the place of beginning or true course of any road shall be uncertain, by reason of the removal of any monument or marked tree by which the road was originally designated, or from any other cause, the county commissioners of the proper county may appoint three disinterested householders of the county to *re-view* and straighten said road, if they deem it necessary. . . ."

There is no provision in § 8 prescribing how the application for the *re-view* of the road shall be made, or who shall make it. All this, however, is provided for by § 1 of the act, which provides, among other things, as follows:

"SECTION 1. That applications for laying out roads, or for viewing, *re-viewing*, altering, or vacating any road, shall be by petition to the board of county commissioners, signed by at least twelve householders of the county, residing in the vicinity where said road is to be laid out, viewed, *re-viewed*, altered, or vacated. . . ."

Now no petition of "twelve householders of the county" was ever presented to the county board for the purpose of procuring a survey and re-view of the road in question, but the only petition that was ever presented for that purpose was a petition of the township board of Lincoln township, by their attorney. This was not sufficient. The petition in such a

Ketner v. Rizer.

3. Public road, must be petition for; jurisdiction. case should be as the law requires, and such a petition is a fact upon which the jurisdiction of the county board depends, and without which no valid proceedings can be had. (*Comm'rs of Wabaunsee Co. v. Muhlenbacker*, 18 Kas. 129, 132.) Neither was there any notice given to the plaintiff nor to the property-owners generally along the line of the road that any such re-view was to be had. But this, perhaps, was not necessary under the statute, and as held by the supreme court of Ohio under a similar statute. (*Beckwith v. Beckwith*, 22 Ohio St. 180.) If, however, there had been any intention to alter or change the line of the road from the place where it was originally located, then the same notice would be required that is required in laying out and establishing a new road. We think the record of said re-view is invalid, and that the court below did not err in refusing to permit it to be read in evidence.

We think this disposes of all the substantial questions raised in this case; and not finding that any material error has been committed in the case, the judgment of the court below will be affirmed.

All the Justices concurring.