HEDWIG REINERT v. S. H. BRUNT et al.

COUNTY SURVEYOR — *Incomplete Survey of Boundaries and Corners.*
   Where a county surveyor, employed under the provisions of the statute to restore or reëstablish the lines and corners of adjoining tracts of land according to the original government survey, finds township corners only, then (the other quarter and section corners

being missing) runs a straight line from one township corner to the other, and on this line places the quarter and section corners, but does not take any testimony to ascertain the lines or corners of the original survey, does not attempt to prove his lines or corners by reestablishing the missing corners from all the nearest known original corners in all directions, does not sufficiently regard the field-notes, and does not, where the original monuments have disappeared, regard the boundary-lines long recognized and acquiesced in, *held*, that such a survey is incomplete, and cannot be approved as the true and correct determination of the boundaries and corners as originally established by the government.

*Error from Lincoln District Court.*

S. H. BRUNT, county surveyor of Lincoln county, in February, 1887, made a survey of the township line in range 9 west, and between townships 12 and 13 south, which had been disputed. A certified report thereof is as follows:

"PLAT AND FIELD-NOTES of survey for Geo. Huhl and others of Lincoln county, state of Kansas, section 1 in township 13, south of base line, range 9, west of 6th principal meridian. George Huhl and Henry Lantz do hereby agree to record the north line of section 1, township 13, range 9 west, as surveyed February 2d and 3d, 1887, by S. H. Brunt, county surveyor.

TOWNSHIP 13 SOUTH, RANGE 9 WEST.

SECTION 1.

H. H. DAVIS,
F. E. PERKINS,
*Chainmen.*

LINCOLN, KANSAS, Feb. 5, 1887.
"In the matter of the survey of the township line in range 9 west, and between townships 12 and 13 south, which has been a disputed line: I made a survey of said township line,

commencing February 2d, and closing February 3d, 1887. The manner in which I made my survey was as follows: Commencing at the township corner between ranges 8 and 9, and between townships 12 and 13, I ran a random line west to the township corner between ranges 9 and 10, all parties interested being satisfied that these township corners are the original government corners. I based my survey by these corners, and not by the government field-notes. In running my line west, I found no section corners established, but on closing on the township line between ranges 9 and 10, I found the township line to be six miles four chains and forty-two links in length. My closing was also one chain and ninety-four links south of the township corner. Then I retraced my line and established the quarter-corner on north line of section 1, township 13 south, in range 9 west, on a right line between the township corners. I also established the corner to sections one, two, thirty-five and thirty-six, in the same manner on a right line between the township corners, after making my connections. The length of township line by the government field-notes is 6 miles, 2 chains and 80 links. By actual measurement, I found it to be six miles, four chains and forty-two links, making a difference of one chain and sixty-two links. This overplus I divided equally in the first five miles, making these points equidistant, leaving 2 chains and 80 links in the last line between sections 6 and 36, as called for in the government notes.

"*Between townships 12 and 13 S., range 9 W.:* From the corner to townships 12 and 13 S., ranges 8 and 9 W., I ran west on a right line between sections 1 and 36.

Chains.

22.00. Cross a small draw; course north and south.

29.00. Top of low ridge; bears north and south.

33.00. Cross a small draw; course north, 3° west.

35.50. Top of low ridge; bears north, 3° west.

40.16. Set quarter-section corner, sandstone, 22x14x8, on east bank of creek.

40.30. Cross creek; course north, 29° west; timber on banks.

41.46. Cross large creek; course north and south; timber on banks. Enter bottom-land.

72.00. Leave bottom-land, and ascend gradually.

80.32⅓. Set section corner to sections 1 and 2, 35 and 36, 24x16x10, limestone.

S. H. BRUNT, *County Surveyor.*"

"STATE OF KANSAS, LINCOLN COUNTY, *ss.*: I, the undersigned, register of deeds in and for the county and state aforesaid, do hereby certify the above and foregoing to be a true, full and complete copy of certificate of survey for George Huhl and others by S. H. Brunt, county surveyor, as the same appears on file in my office.

"Witness my hand and official seal, this 26th day of March, 1887.                 N. S. BRYANT, *Register of Deeds.*"

Hedwig Reinert claimed that her interest was affected by the survey, and appealed from the report of the county surveyor to the district court of the county. Hon. S. O. HINDS, judge of the fourteenth judicial district, having been of counsel in the matters in controversy, the appeal was heard at the April term for 1887 by Hon. W. W. SMITH, who was duly elected and qualified as a judge *pro tem.* A general finding against the appellant and in favor of the appellee was made by the court; thereupon the court approved the report of the county surveyor, and adjudged that the cost of the survey should be taxed to the parties interested according to their respective interests therein. The appellant excepted to the rulings and judgment of the court, and brings the case here.

*Garver & Bond,* for plaintiff in error.

*Coad & Downey,* and *E. A. McFarland,* for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: This was a controversy in the court below over the correctness of a survey made by S. H. Brunt, the county surveyor of Lincoln county, of the township line between townships twelve and thirteen, in range nine west, in that county. Hedwig Reinert owns the south half of the southwest quarter of section thirty-six, and George Huhl owns the northwest quarter of section one. The other defendants in error own, also, lands north of this line, and have interest in common with Hedwig Reinert, the appellant in the court below. She claims that her southwest corner as located by the government survey is about thirteen rods south

of where the survey made by S. H. Brunt, the county sur-
veyor, established it; that the new survey makes a difference
of twelve or thirteen acres in the quantity of land in her
farm; that no attention was paid by him to any monuments
other than the two township corners; that no attempt was
made to find the lost corners, and that the field-notes were
disregarded.

It appears that several years ago, W. Bishop, who has been
a county surveyor of Lincoln county for ten years, surveyed
the disputed line between sections thirty-six and one. Upon
the trial, the principal contention seemed to be whether the
lines and corners established by Bishop were in accordance
with the government lines and monuments. On the one side
it is claimed that the Bishop survey was a correct line; on
the other, that the Bishop survey was erroneous, and there-
fore that the survey of Brunt was the true one. The great
preponderance of the evidence tended to show that the true
section corner of the northwest corner of section one was
originally established at or near a prairie-dog hole, and that
the quarter-corner was west of the creek. There was some
evidence, however, tending to show that Bishop did not suf-
ficiently examine or identify the stone at the dog-hole as a
government monument; that the stone on the west side of the
creek was a sandstone, and not the limestone described in
the field-notes. Then, again, Robert Farnes testified that he
knew of a stone as a corner, which had been broken off, on
the east side of the creek. This evidence tended to contra-
dict, in a slight way, the evidence given in support of the
correctness of the survey of Bishop. It is probable that
Farnes was mistaken, or did not fully understand the import
of the question. Therefore if the sole matter for our deter-
mination was whether the survey of Bishop was in all re-
spects in accordance with the government monuments and
corners, we would be compelled to follow the general finding
of the trial court.

We think, however, that there is not sufficient evidence in
the record to sustain the finding of the trial court in its ap-

proval of the report or survey of Brunt. Whatever may be said as to the corners testified to by Bishop, there is not sufficient evidence in the record to show that the survey of Brunt was correct. The report of the survey on its face shows that Brunt only followed township corners and disregarded the field-notes. The report says that in running his line west, he found no section corners, but does not show he sufficiently attempted to search for the original or lost corners between the township corners. He found the township corners between ranges eight and nine, and between nine and ten, then ran a straight line from one to the other, and on this line placed the quarter and section corners between thirty-six and one. He did not take any evidence in the community or neighborhood as to the lost lines or corners, and paid no attention to hunting for monuments or corners, other than the two township corners. He says in his report that "I based my survey by these corners, and not by the government field-notes." In his testimony Brunt attempted to explain his disregard of the field-notes by saying he merely disregarded the variations given in the notes.

While distances and bearings must be disregarded if the monuments on the ground for the corners as originally established can be found, or if lost, their original location can be ascertained, a surveyor should not disregard the field-notes merely to make a straight line between township corners. The township line is not necessarily straight in all cases. (*McClintock v. Rogers*, 11 Ill. 279; *McAlpine v. Reicheneker*, 27 Kas. 257.) As affects the disputed corners, the field-notes of the government survey are as follows:

"From the corner of townships 13 and 13 S., R. 8 and 9 W., I run S. 89° 54′ W. on a true line between sections 1 and 36. Va. 11° 40′ E.

"33 chains—A creek 30 links wide runs N.E., narrow belt of timber on banks; enter creek bottom on left side.

"40 chains—Set limestone 18x15x4 for ¼ sec. cor.

"75 chains—Leave bottom and enter upland; bears N.E. and S.W.

"80 chains—Set limestone 20x10x5 for cor. to secs. 1, 2, 35 and 36."

The field-notes mention the creek and describe the quarter-corner as west of it. The notes say that the course of the creek where the line crosses is northeast. Brunt says where he crossed the creek the course is northwest. Again, Brunt in his survey did not follow the directions stated in *Everett v. Lusk*, 19 Kas. 195. His survey was not as extensive as it should have been under the circumstances, in order to insure accuracy to a reasonable certainty. He should have reëstablished all missing corners from all the nearest known original corners, in all directions, following section lines. (See also *McAlpine v. Reicheneker*, supra; Comp. Laws of 1885, ch. 25, §§ 161–165.)

Further, Brunt in his survey seems to have wholly disregarded the rule in *Tarpenning v. Cannon*, 28 Kas. 665, "that a boundary-line long recognized and acquiesced in is generally better evidence of where the real line should be than any survey made after the original monuments have disappeared." Also, 34 Kas. 595.

The judgment of the district court will be reversed, and the cause remanded for a new trial.

All the Justices concurring.