## A. J. FOSKUHL *et al.* v. CHARLES HERZER.
### No. 15,006.    (91 Pac. 56.)

1. SURVEYS AND BOUNDARIES—*Government Corners—Evidence.* It was said the rule that where known government corners are shown, or, in cases where they have disappeared, if their location can be ascertained, the monuments must govern, and the field-notes of the government survey must be disregarded, is well settled.

2. ——— *Finding Held Conclusive.* A finding upon conflicting evidence that one of two boundary-lines was correct held conclusive on review.

3. ——— *Acquiescence—Evidence.* It was said that a boundary-line long recognized and acquiesced in is generally better evidence of where the real line should be than any survey made after the original monuments have disappeared.

Error from Ford district court; EDWARD H. MADISON, judge. Opinion filed July 5, 1907. Affirmed.

*F. Dumont Smith,* for plaintiffs in error.
*Sutton & Scates,* for defendant in error.

*Per Curiam:* In the early settlement of Ford county it appears that considerable confusion resulted in land surveys in some localities for the reason that no gov--

ernment corner-stones could be found. This was especially true in townships 27, 28 and 29, range 22. In 1885 the county surveyor, one Mather, undertook to survey and subdivide these three townships. He started at the sixth standard parallel in Clark county and ran north on the range line between ranges 21 and 22. From the southeast corner of township 29, range 22, he ran north a distance of eighteen miles before finding any government corners or pits or mounds called for in the field-notes. Twelve miles north of the south line of Ford county he reached the Arkansas river, which he declined to consider a witness-mark on account of the shifting, sandy condition of the banks. In township 27, north of the river, he reached the "Santa Fe Trail," mentioned in the field-notes of the government surveys, and at the northeast corner of township 27, range 22, he found a government stone. In the distance of eighteen miles he found, however, an excess of about thirty-six chains, amounting to almost a half mile, and he apportioned this excess from the south line of the county to the trail between these points. The range line between 22 and 23 was run in the same manner and with the same results, except that at a point eleven miles north of the south line of the county he came to Mulberry creek. The government field-notes called for a corner-stone just south of this creek, as the southwest corner of section 6, township 28, range 22. No apparent change had taken place since the original goverment survey in 1868, and he therefore took this as a true witness-mark, and proceeded to apportion the excess found by actual measurement from that point south over the eleven miles, and to apportion the remaining excess from that point north to the trail. He then surveyed and subdivided townships 28 and 29, in range 22, except a small portion of the north part of township 28, and set up corner-stones. He was called away about this time and never returned to complete the survey and subdivision of the north tier of sections of township 28.

The Mather survey appears to have been generally acquiesced in by the public. Roads were laid out upon petition in townships 28 and 29, fences built, hedgerows plowed, and trees set out, according to this survey. The immediate grantors of plaintiffs in error petitioned for public roads in accordance with this survey.

This controversy arises over the fact that plaintiffs in error have taken possession of portions of tracts of land claimed by defendant in error, who brought separate actions in ejectment. These were consolidated and tried as one. The court found generally for plaintiff, and defendants seek by this proceeding to reverse the judgment.

About 1887 General Fonda, an experienced surveyor, was ordered by the county commissioners of Ford county to make a survey of these three townships. He had previously made partial surveys with Eckert, another surveyor, and claimed to have located the northwest and northeast corners of township 28, range 22, as government corners. He relied, however, to some extent upon information given him by Eckert as to the location of what is referred to in the evidence as the "Van Tromp" corner, at the northwest corner of township 28. The corners in dispute are the exterior corners of township 28, range 22.

Black, Ford, Eckert, Lewis and other surveyors testified, and a number of plats and surveys were introduced in evidence. Plaintiffs in error concede that the general finding of the court in favor of defendant in error concludes them unless the court erred in a matter of law, and their contention is that the record shows conclusively that township 27 was surveyed and the government corners found and proved, and that what is known as the "Fonda" corner is a government corner, and the court erred in refusing so to regard it. The claim is made that the court disregarded the rules in reference to surveys established by the cases of *Everett*

*v. Lusk,* 19 Kan. 195, *McAlpine v. Reicheneker,* 27 Kan. 257, and *Tarpenning v. Cannon,* 28 Kan. 665, to the effect that where known government corners are shown. or, in cases where they have disappeared, if their location can be ascertained, the monuments must govern, and the field-notes of the government survey must be disregarded. The rules laid down in those cases are well-settled rules in cases of disputed surveys, but it by no means follows that the trial court erred.

It is not conceded by defendant in error that there was conclusive evidence of the actual location of any government corners in township 27, or that the "Van Tromp" corner testified to by General Fonda was proved to have been a government corner. On the contrary, it was contended by him that no government corners were ever found or ascertained in the three tiers of townships which included township 27, and several surveyors so testified. The controversy in the evidence was waged over these disputed facts, and there was, we think, sufficient evidence to warrant the finding of the court. On the other hand, the testimony of General Fonda and surveyor Black was, we think, sufficient to have sustained a finding to the contrary if the court had taken that view.

Another rule laid down in *Tarpenning v. Cannon, supra,* has, we think, a forceful application to the facts and circumstances of this case. The rule is that "a boundary-line long recognized and acquiesced in is generally better evidence of where the real line should be than any survey made after the original monuments have disappeared." (Syllabus.)

As observed, the Mather line was generally acquiesced in by the public since 1885; roads were laid out in conformity thereto on petition signed by the immediate grantors of plaintiffs in error; fire-guards were made, fences built, trees planted and other permanent improvements made with reference to it; and courts should hesitate to change the boundaries of lands in

cases where it is conceded that the lines were never surveyed by the government except theoretically, and overturn the boundaries which have been so long recognized, unless upon the clearest kind of proof.

The judgment is therefore affirmed.