*In re* Appeal of JOHN NELSON from a Survey of Land
made by Hudson Harlan, County Surveyor.

No. 17,423.

SYLLABUS BY THE COURT.

BOUNDARIES — *Former Surveys — Lost Corners—Acquiescence—
Parol Evidence.* At the request of a landowner a survey was
made of a certain section, starting from an established corner
of the section, surveying to and adopting two other section
corners established and marked by previous surveys made
respectively thirty and twenty-three years before, when many
government markings of corners, since obliterated, were in
place. The former surveys were not made and recorded under
the statute and are not conclusive. The landowners affected,
including the appellant, who assisted in the last of these
former surveys, had long acquiesced in the boundaries estab-
lished thereby. It is held that the markings of missing cor-
ners made in such former surveys should be considered as
evidence tending to show where the original monuments had
been located in making the government survey, and that parol
evidence of these former surveys, and of the location and
markings of corners, is admissible.

Appeal from Trego district court. Opinion filed De-
cember 7, 1912. Affirmed.

*David Ritchie,* of Salina, and *John A. Nelson,* of Wa
Keeney, for the appellant.

*Lee Monroe,* and *W. S. Roark,* both of Topeka, for
the appellees.

The opinion of the court was delivered by

BENSON, J.: A survey of section 13, township 12,
range 22, in Trego county, was made upon the request
of a landowner. The appellant owns the west half of
section 13 and the northeast quarter of section 14, and
contends that the north boundary is several rods north
of the line established by the survey. The correctness
of the starting point of the survey, which is on the
range line at the southeast corner of the section, is

not disputed. The contention appears to be over the location of the southwest and northwest corners, where the monuments of the government survey are missing.

Oral evidence was received tending to prove the following facts: In March, 1879, a survey was made by Mr. Peck, a deputy county surveyor, of the town of Ogallah on the line of the Union Pacific railroad in the south half of section 23, in the same township and range. The surveyor found the government monuments at the northwest, southwest and southeast corners of the section. No monument was found at the northeast corner, which is the southwest corner of section 13, and this corner was relocated by the surveyor by measurements from other corners where monuments remained, and from the line of the railroad, the location of which was shown by the government plat and field notes made after the road had been built. Measurements were also made south from the line of the railroad to the southeast corner of section 23 to verify the location of the missing northeast corner. A stone was then set to mark the corner so relocated, which has since been recognized in the neighborhood as the true corner. Public roads intersecting at that corner have been fenced and traveled for over twenty years.

In May, 1885, Mr. Ferris, county surveyor, made surveys of lands in sections 11 and 14 and marked the northeast corner of section 14 (which is the northwest corner of section 13)—then missing. Mr. Nelson, the appellant, assisted in the survey in section 14, acting as flagman. The southeast corner of section 14 was established by that survey at the same point marked by Peck as the northeast corner of section 23 in his survey just referred to. The surveyor set a stone at the northeast corner of section fourteen (southeast of section 11), designated as the "Ferris corner." This stone remained in place until after the

survey by Mr. Harlan was made. The appellant, who owned the northeast quarter of section 14, then built a fence west from that stone along the north line of his land, which was continued by other owners of land to the west, which fence still stands. The appellant's fence stood until it rotted down. It stood back a few feet from the boundary indicated by the Ferris survey, because of a road along that boundary. In making the Ferris survey a government monument was identified at the half-section corner on the west boundary of section 11. Other government monuments were also found in the vicinity. One was standing at the northwest corner of section 23. Other section corners were found and identified.

In making the survey appealed from the surveyor started at the southeast corner of section 13, and a line was run west at a variation of 17° 27' south, 39.50 chains, as the report states, to "old ¼ corner" and 79.13 chains "to the known and established corner, 13-14-23-24." This is the Peck corner. Thence north between sections 13 and 14, at a variation of 11° 42' east, 41.95 chains "to a stone in road ¼ corner," and 83.90 chains "to Ferris corner, 11-12-13-14." Thence east between sections 12 and 13, at a variation of 14° 27', 39.54 chains, where stones were set for ¼ corner, and 79.19 chains to "known and established corner on 7-12-13-14 [18] on range line." The ¼ corner stone on the east line of section 13 was found in place. The center of section 13 was established by running straight lines from opposite quarter-section corners—the point of intersection being marked as the center. Measurements were not made from other government corners in the same township or vicinity.

The distance between the Peck and Ferris corners is 83.90 chains, and between the latter corner and the section corner north of it, established also by Mr. Ferris, the distance is approximately the same. This

apparent excess—supposing the Peck corner to have been rightly located—was therefore divided, both in the Ferris survey and in the one appealed from, between the two rows of sections. No record of the Peck survey was shown. A record of the Ferris survey was read, showing among other things that the surveyor marked the northeast corner of section 14 (the Ferris corner) by stone and sod marks, and that John Nelson (the appellant) and others witnessed the setting of stones.

The appellant contends that as the government monuments at the northwest and southwest corners of the section surveyed in the proceedings appealed from were missing the surveyor ought to have made measurements from known government corners in the vicinity and determined whether the Peck and Ferris corners were correctly located, and that in the absence of such confirmation the field notes should have been followed—which appear to locate these corners otherwise than these monuments indicate—and that in any event the surveyor disregarded the statute and the survey should have been set aside.

The statutory rules referred to are copied in *In re Martin's Appeal,* 86 Kan. 336, 120 Pac. 545, and affirm the principle that missing corners shall be established in accordance with the government survey, and when this can not be done they may be reëstablished according to the government field notes, adopting proportionate measurements when necessary. It was held in *Tarpenning v. Cannon,* 28 Kan. 665, that:

"In establishing the lines and corners for owners of adjacent tracts of land, the surveyor must disregard the lines as shown by the field-notes of the United States survey, if the corner-stones set by the government can be ascertained as originally located.

"A boundary line long recognized and acquiesced in is generally better evidence of where the real line

*In re* Nelson's Appeal.

should be than any survey made after the original monuments have disappeared." (Syl. ¶¶ 2, 3.)

The boundaries wherein the Peck and Ferris corners were marked appear to have been generally acquiesced in, the former since the year 1879, and the latter since the year 1885. They were well known in the neighborhood and to the surveyors and treated as correct by the landowners, including the appellant. He assisted in the Ferris survey as an interested owner, and by his conduct in erecting a fence in accordance therewith along the north line of the lands in section 14, then owned by him, evinced his acquiescence. While the fence was placed a few feet from that line because of a public road, the stone and the line extending west from it were apparently regarded by him as the true boundary for more than twenty years.

In this situation the remarks of Judge Cooley, quoted in the Tarpenning case (28 Kan. 665) are pertinent:

" 'To bring these lines into discredit, when people concerned have not questioned them, not only breeds trouble in the neighborhood, but it must often subject the surveyor himself to annoyance and discredit; since in legal controversy the law, as well as common sense, must declare that a supposed boundary line long acquiesced in is better evidence of where the real line should be than any survey made after the original monuments have disappeared.' (8 Engineering News, No. 8, 156-158.)" (p. 668.)

When these former surveys were made, many government monuments were still in place, and were regarded in reëstablishing the missing corners. The surveyor in this case availed himself of the work of his predecessors who had better evidence before them than was available to him. Witnesses present at those surveys described how they were made and what monuments were observed. If this evidence was competent the finding of the court that the present survey was correct ought not to be disturbed merely because exact

measurements made according to the field notes might vary the boundaries.

"Where known government corners are shown, or, in cases where they have disappeared, if their location can be ascertained, the monuments must govern, and the field notes of the government survey must be disregarded." (*Foskuhl v. Herzer*, 77 Kan. 809, syl. ¶ 1, 91 Pac. 56.)

With near-by monuments in place when the former surveys were made it is more probable that correct results were reached by regarding the corners then reestablished than can be done by making a new survey from the field notes and monuments now remaining, disregarding the markings made in the former surveys. Especially is this true where the parties interested living near the lands affected, with the knowledge gained by actual daily observation, have long acquiesced in the boundaries fixed by the former surveys.

It is contended, however, that parol evidence of the former surveys was incompetent. It is true they were not made under the statute, so as to have the conclusive effect given to records of surveys made in that manner. This, however, does not exclude evidence of the facts shown in this case. While not conclusive, it is admissible as tending to show that the stones set by the surveyors were placed at the same points marked in the government survey. The court appears to have so considered the evidence, and for this purpose it is held competent. Like evidence was held admissible in *Haughton v. Bilson*, 84 Kan. 129, 113 Pac. 400. In *In re Martin's Appeal*, 86 Kan. 336, 120 Pac. 545, a former survey was referred to in the opinion as evidence to be considered in ascertaining where the missing corners had been established by the government. In *Dent v. Simpson*, 81 Kan. 217, 105 Pac. 542, it was held that the record of a former survey,

*In re* Nelson's Appeal.

whether valid and binding or not, was admissible to explain a survey in controversy. A similar ruling was made in *Holliday v. Maddox,* 39 Kan. 359, 18 Pac. 299. The supreme court of Michigan used language pertinent in this case:

"We have no doubt the county surveyor who made the survey of 1879 was intelligent and had the purpose to be accurate. But we have no reason to suppose the one who made the survey of 1856 was not equally trustworthy, and the circumstances were altogether more favorable to a correct result at that time than when the last survey was made. The land was then but recently located; it is highly probable that corner posts and witness trees remained; if they were gone, there might be disinterested persons in the neighborhood who had seen them and could assist in determining their location, and there was then no existing dispute and litigation to interest parties in leading the surveyor astray." (*Case v. Trapp,* 49 Mich. 59, 61, 12 N. W. 908.)

The statute permits the examination of witnesses by the surveyor. (Gen. Stat. 1909, § 2274.) Manifestly upon a review of a survey in the district court such evidence may be heard, whether the surveyor has called the witnesses or not. The surveyor appeared to have knowledge of the former surveys, and of the circumstances of the marking of the Ferris corner, and the court heard the evidence and found the facts, which confirmed the correctness of the surveyor's conclusion.

The judgment is affirmed.