No. 43,751

The State of Kansas, ex rel. John S. Elting, County Attorney of Lane County, Kansas, *Appellant*, v. Dale W. Neeley and Lawrence Richards, *Appellees*.

(396 P. 2d 345)

Opinion filed November 7, 1964.

*John S. Elting* of Dighton, and *James W. Wallace* of Scott City, argued the cause, and *D. B. Lang* of Scott City, was with them on the brief for appellant.

*Ray H. Calihan, Jr.*, of Garden City, argued the cause, and *Ray H. Calihan, Logan N. Green*, and *Daniel J. High*, all of Garden City, were with him on the brief for appellees.

The opinion of the court was delivered by

Price, J.: The question in this case concerns the location of a county road.

The action was brought by the state, on the relation of the county attorney, for an order requiring defendants to remove obstructions placed on the alleged legal road; to enjoin defendants from obstructing and interfering with such road and its use, and to quiet title thereto in the state.

Judgment was for defendants and plaintiff—the state—has appealed.

The case was tried upon stipulations of fact—and, highly summarized—the background of the controversy is substantially as follows:

The proceedings for the location of the road in question were had pursuant to the provisions of R. S. 1923, 68-102, *et seq.*

On April 19, 1930, a petition was filed with the board of county commissioners of Lane county, petitioning that body to cause a view to be had for the location of a road described as:

"Beginning at the southeast corner of Section Thirty-two, Township Sixteen, Range Twenty-nine, *thence north on section line three and one-half miles* to the northeast corner of the southeast quarter of Section Seventeen, Township Sixteen, Range Twenty-nine." (Emphasis supplied.)

On May 5, 1930, the board considered the petition and found it to be legally sufficient. Three viewers were appointed, and the county clerk was directed to prepare a notice for publication in the official county newspaper. The legal description of the proposed road contained in the order was identical to that contained in the petition.

The public notice of the time and place of meeting of the viewers, which was to be on May 27, 1930, was published for two consecutive weeks in the official county newspaper. The legal description of the proposed road contained in such published notice was identical to that contained in the petition.

On July 7, 1930, the board made and entered its final order. This order recited a finding that no legal objections had been made to the location of the proposed road, that such road would be of public utility, and ordered that the viewers' report, together with the surveyor's report of survey, be accepted and adopted, and that the road be established in accordance therewith. The legal description of the road contained in this final order was identical to the description contained in the petition and published notice of view. The final order further directed that the road be opened for public travel to a width of fifty feet. The order further cited that no warrants be issued to any one as compensation for damages occasioned by the location and restablishment of the road.

The viewers' report of view, and the surveyor's report of survey and his plat thereof, which were accepted and adopted by the board in its final order, are missing from the files in the office of the county clerk, but it was stipulated that the proceedings had pursuant to the petition had not been amended, vacated, modified or changed, and that no proceedings had been had to change, vacate or relocate the road established as a result of such road proceedings.

At some time subsequent to July 1930 a road was traveled by the public which had for its places of beginning and termination the same points designated and described in the road petition and in the proceedings had pursuant thereto, but the road so traveled and maintained by the county deviated and departed from the description contained in the petition and subsequent proceedings—that is

to say—between the points of beginning and termination it meandered a short distance to the west of the section line, although following a line generally parallel to such section line.

At some time between 1950 and 1956 one of the defendants removed a curve in such traveled and maintained road in such manner as to cause the same to traverse a draw or depression, and such reconstructed portion was thereafter likewise maintained by the county. Defendants, being adjacent land owners, occupied and erected fences across land which is included within the fifty foot strip along the section line, and there is no road on land occupied by defendants which is traveled by the public or which has been physically opened to, and maintained for, public use.

After hearing the matter upon stipulations of fact substantially as above related, and arguments of counsel, the trial court concluded that the established location of the road is as the same is now physically located on the deviating route along the section line—and judgment was entered for defendants accordingly.

And so, briefly—we have this situation:

The petition for the road, the notice which was published, and the final order of July 7, 1930, all described the proposed road as beginning at a certain point and thence north *on the section line* for three and one-half miles to a described point of termination. As a practical matter, however, the road actually used by the traveling public and which it is conceded was maintained by the county—between the points of beginning and termination—meandered to the west and deviated from the true section line. In the meantime, defendants, being adjacent land owners, occupied and obstructed portions of the land included within the fifty foot strip along the section line.

As heretofore related, the viewers' report of view and the surveyor's report of survey, are missing from the files of the county clerk. In support of the trial court's judgment defendants call attention to a provision found in R. S. 1923, 68-104, which provides that a viewing and survey may be dispensed with when a petition for a road specifies that the road be located upon or along a section line. The proceedings in this case show that neither the viewing nor the survey was dispensed with, and thus they argue that the only conclusion which can be drawn from such fact is that there was no intent to establish a section line road, and in support thereof rely upon *Shaffer v. Weech*, 34 Kan. 595, 9 Pac. 202 (1886).

Plaintiff, on the other hand, contends that where, as here, all available records conclusively show that a road is legally and correctly established on a section line, the true line of the road is not changed by a slight meandering of the road as traveled, and relies on *Shanline v. Wiltsie,* 70 Kan. 177, 78 Pac. 436, 3 Ann. Cas. 140 (1904), in which it was held:

"Where a legal highway is duly established by order of the county board along a section-line, but the road actually traveled, through misapprehension, departs somewhat from the true line at one place, such conditions, for however long continued, will not operate to effect an abandonment of the public easement over the true course, or to create by prescription or limitation a right of way over the tract actually used for travel." Syl. 4.

At pages 184 and 185 of the opinion, the Shaffer case, above, is distinguished.

In the case before us all available records show the road was to be on the section line. The descriptions in the petition, the notice of view which was published, and the final order, described the road as running north *on the section line* for three and one-half miles. In fact, it was stipulated (No. 6), that the final order of July 7, 1930—

". . . set out and recited that such proceedings came on for hearing on the report of viewers and surveyors upon the location of the road described in such final order. The description in such order is identical to that description in the petition for the road and notice of view."

The fact no compensation was paid to any one for damages occasioned by the location and establishment of the road indicates that it followed the section line rather than traversing privately owned lands. The general rule is that a private individual cannot obtain title to a public highway by adverse possession (*Kollhoff v. Board of County Commissioners,* 193 Kan. 370, 373, 394 P. 2d 92). We believe this case is controlled by what was said and held in the Shanline case, above.

The judgment is therefore reversed.