C. D. BONNEY v. ALEXANDER MCLEOD.

LAND LAWS: SURVEYING: MAGNETIC VARIATION.—The true boundaries of land once owned by the United States, are the lines established by the survey made by the government, and under which it was sold; and wherever these lines are obvious, they must be followed, notwithstanding the government survey may have been made upon an assumed, or a wrong magnetic variation.

APPEAL from the Chancery Court of Yazoo county. Hon. E. G. Henry, chancellor.

This was a bill filed by the appellant against the appellee for the purpose of establishing the division line between the east and west halves of section 12, township 9, range 4 west, in Yazoo county.

The bill alleges, that the complainant is the owner of the west half of said section, and has been since 1833; and that the defendant is the owner of the east half of the same. That about twenty years ago, a lane dividing said lands, or supposed to divide them, so as to give each his due portion of the section, was laid off on the dividing line, running three-fourths of a mile. Each party contributing a fair proportion of land for the said lane. That the fence on complainant's side was kept up by him, and that on the other by the defendant, and those under whom he claims title; and that the said lane was recognized and acquiesced in by him, and all the former owners of the east half of the section, and through whom McLeod claims title, up to within the last two years, as the true division line. That complainant has cut a ditch on his side of the line so established, which is essential to prevent his lands from overflowing.

That in February or March, 1856, the defendant procured leave of the county surveyor to run a line between his land and that of complainant. That this line gives to defendant all of said lane and part of the ditch cut by complainant. This survey is incorrect. That two other surveys had been previously made, one in 1836 and one in 1845 (this last by the county surveyor), and both of them run the line in said lane.

That in April, 1856, complainant and defendant agreed to refer the matter to arbitration, and thereupon each of them signed the following instrument, which is made Exhibit A. to the bill:

"We, the undersigned, equal owners of section 12, township 9, range 4 west, hereby agree to have a line run north and south, as nearly equal as can be made, from the northern and southern centres of said section, when the northern line can be accurately measured, commencing at the northwest corner of said section, and running to a parallel of the eastern boundary thereof; thence beginning at

the southeast corner of said section and running to a parallel of the western boundary of said section; thence north from centre to centre of said northern and southern boundary of said section: said line may be measured and run by any two persons that may be selected by the parties, or their representatives, binding themselves in the sum of five hundred dollars to abide by said decision."

(Signed)     "C. D. BONNEY,<br>"ALEX. McLEOD."

The bill further states, that in pursuance of said agreement, the parties selected M. W. Ewing and John McKee to run said line and make the proper division of the section. That the arbitrators agreed to make the division. That they selected a starting-point, and when they had run one mile on the east line to find a lost corner, McLeod became satisfied that he would not get as much as was allowed him under the Camp survey, and avowed his determination not to abide by the same. Thereupon Ewing and McKee, thinking it was unnecessary further to proceed, declined all further action as arbitrators, and made a statement in writing, which is filed as Exhibit B.

This exhibit in substance states, that on the 23d of March, 1857, the arbitrators met to discharge their duty, and that Bonney and McLeod were also present, and that the arbitrators proceeded to find the township line between the ranges 3 and 4 west, and which was also the eastern boundary of said section 12 That they set the compass at a marked fore-and-aft tree, which stood some forty or fifty yards south of southeast corner of said section 12, and which tree, both parties stated, had been established as a fore-and-aft tree by Camp, the county surveyor. That after examining the bearing corner trees, and setting a stake, they found that this stake ranged with another fore-and-aft tree about one hundred yards north of the stake, with a variation of 7° 30' east; they found marked trees on both sides of this line; they then set the compass north of the last-mentioned fore-and-aft tree, and took an object across a creek bottom, near a half mile from the southeast corner, with the same variation of the compass, and found other marked trees on both sides of said line for about one hundred and fifty yards, when they entered cleared land, without any acknowledged

mark of any kind. When they reached the northeast corner of said section 12, they found that the flag-staff was fifteen feet east of the corner as ascertained by the county surveyor, and which McLeod contended was the true corner; and he stated that he would be satisfied with no other. The arbitrators believing that any division they might make which did not adopt the Camp survey, would not be agreed to by McLeod, made no further survey.

The bill charges that had the arbitrators continued their survey, the division line would not have materially differed from the one run in 1836 and again in 1845.

The bill then claims that the complainant is entitled to have the said lane established as the division line, from the acts of all parties interested in acquiescing in and recognizing it as the true boundary. But as the complainant had agreed that the division should be made by Ewing and McKee, he was still willing to abide by any survey they might make, but he is unwilling to have the survey made by Camp.

The bill then states that McLeod claims the entire lane; has put obstructions on a portion of it, and threatens to fill up the ditch cut by complainant, and to remove the rails on complainant's side of the lane, and asks for an injunction against such acts.

McLeod, Ewing, and McKee were made parties defendant.

The two latter answered, disclaiming all interest in the suit, and protesting against being called upon to take any further action in relation to the division of the land.

McLeod's answer denied all knowledge of the lane having been established as a boundary line, and all knowledge of surveys of 1836 and 1845, and required proof. The answer admits the execution of Exhibit A. and the proceedings of Ewing and McKee thereunder, as stated in Exhibit B. Admits that he refused to be bound by said survey, because Ewing and McKee had commenced at the southeast corner instead of the northwest corner, as provided for in the arbitration; denies that they run the line with the proper variation, and states that the field was of the original survey; shows that the said survey was made at a magnetic variation varying from 8° 30′ to 8° 45′, and that the true variation at that time was 8° 40′; that the true variation at the time said survey was made in

March, 1833, was 8° 30', and the true variation by which said line should have been run by Ewing and McKee, was about 8° 35' east.

The answer admits that the respondent had a survey made by Camp, and that the line thus run is correctly stated in the bill. The answer refers to a copy of the original field-notes as being on file in the probate clerk's office, and makes said copy Exhibit No. 2.

The paper filed, Exhibit No. 2, is as follows:

"Note. In the surveys of Yazoo county, each surveyor seems to have run at a magnetic variation which pleased himself. It is not stated in any portion of the surveys that an observation was taken to ascertain the true magnetic variation. 8° 30' to 8° 45' east seems to be the extremes, both of which, I have no doubt, from observation made by myself, a few years after on Honey Island, were wrong. I found the true magnetic variation to be, in 1827, 8° 40' east. At this time, I would suppose it to be about 8° 30' east.
                                        "A. D———."

The certificate of the probate clerk states that the above is a true "transcript from the record of field-notes now on file" in his office.

The answer states that the respondent is willing for Ewing and McKee to run the line, if it shall be done with the proper variation.

The answer then makes some allegations in relation to the obstruction by complainant of a natural drain on respondent's land, not necessary to be set out, and the respondent then makes the whole answer a cross-bill.

Bonney's answer denies that the field-notes of the original survey show the variation stated by McLeod.

An order was made, without objection by either party, requiring Camp, the county surveyor, to divide the section.

Camp made this survey with a magnetic variation of 8° 18' east, and the dividing line thus run gave all of the lane to McLeod, and a portion of the fence on Bonney's side of the lane. In Camp's certificate of survey, he states that he started at the northwest corner of the section, and after making an offset line to avoid high water on the northern boundary, he ran to the eastern line of the section; but he does not state how he ascertained the northwest

corner, or the eastern line, nor does he state why he adopted the magnetic variation of 8° 18', nor are these matters explained in his deposition.

The confirmation of this report was objected to by Bonney, but the report was confirmed; and on final hearing, the division line thus run, established as the true one, between Bonney and McLeod.

From this decree, Bonney appealed.

*Nye* and *Hill*, for appellant.

*Gibb* and *Wilkinson*, for appellee.

HARRIS, J., delivered the opinion of the court.

The only assignment of error which we deem it necessary to notice in this case, is that relating to the confirmation and establishment of the line, indicated by the survey of Camp, appearing in the record.

The object of the bill was to settle the dividing line between the complainant and defendant, the owners, respectively, of the west and east halves of section 12, township 9, range 4 west, in Yazoo county, Mississippi.

The bill alleges, that about twenty years since, a lane dividing said section between the proprietors thereof, and for their convenience, was made, in which complainant, and those under whom defendant claims, have acquiesced as the boundary of their respective halves of said section. That complainant has, at great labor and expense, cut a ditch upon his side of said line, and claimed and held possession, and exercised ownership over the same, and the right to the common use of said lane, without dispute, until within the last two years before filing said bill, when said defendant procured a survey without notice to complainant, running a line different from that established and acquiesced in, and on each side of which said lane was opened by the respective owners under whom said defendant claims as aforesaid.

That to avoid difficulty, an agreement was entered into between the said complainant and defendant, to refer the matter in dispute to two persons, to be selected by them. That the selection was made, and the arbitrators entered on the discharge of their duty,

according to said written agreement; but abandoned the same, on account of the refusal of said defendant to abide their decision.

The bill then states, that defendant now claims to appropriate the whole of said lane and the fences on each side thereof to his own use, and also the right to fill up complainant's ditch.

The bill prays for an injunction, and for the establishment of said lane as the dividing line between them; or that the said arbitrators may settle the line between them according to the agreement, filed as Exhibit A.

The answer of defendant, McLeod, admits his claim to the east half of the section, as stated; but denies any knowledge that the lane was ever established or recognized as the dividing line between the owners of the east and west halves of said section, and calls for proof. The answer admits the execution of agreement A., and the selection of arbitrators, and that they entered on the discharge of their duties under said agreement; but denies that they commenced or proceeded to ascertain said dividing line according to the terms of the agreement, or according to the proper magnetic variation of the compass. That they took an assumed variation of seven degrees and thirty minutes, instead of eight degrees and thirty-five minutes, which he insists is the true variation.

The answer avers a willingness, on the part of defendant, to abide by said agreement, and the decision of the arbitrators selected to run said dividing line.

Ewing and McKee, the arbitrators selected by the parties, filed their answer to the bill, admitting their action, as stated, and the refusal of defendant, McLeod, to abide their decision. And they decline all further connection with the matter.

The record next shows an order of survey made by the court, without any objection; notice by the sheriff to the parties of the time of the execution of said order of survey; and then a plat and certificate of survey by the county surveyor, reported to the court. Exceptions to the report, and its confirmation by the court.

The case was then submitted on the pleadings and proofs, and a decree passed, establishing the said survey as the dividing line between the parties. And from this decree an appeal is prosecuted.

On the final hearing it appeared in evidence, by the statement of the arbitrators who had been selected to run the dividing line

between the parties, that they were shown the tract of land by the parties, and by applying the compass to the marked and established township line, upon which the land in question lies, they ascertained the variation of the compass on that line to be seven and a half degrees east; and that defendant insisted that they should adopt eight degrees and thirty-five minutes east, instead of the variation indicated by the old line of survey.

It further appears, from the plat and report of the county surveyor, that in making his survey he adopted an arbitrary variation of eight degrees and eighteen minutes east, instead of the variation indicated by the marked and established line of boundary of said section: for neither in the report of the surveyor, nor in his deposition, is the testimony of the arbitrators (in their statement appended as Exhibit B. to the bill, and admitted by the answer) denied or questioned. It must be, therefore, taken as true in this investigation, that the old marked line of survey of said section indicates seven and a half degrees as the true variation of the original survey, instead of eight degrees and eighteen minutes.

It follows inevitably from these facts, that the survey made by the county surveyor, and adopted by the court, was erroneous.

In the *absence* of old and established lines of survey indicating the proper variation to be adopted, while it would be proper to resort to other modes of ascertaining the true variation regulating such survey, to enable the officer to locate accurately the old lines of boundary, yet it was never held that an existing, known boundary line could be changed to suit the variations of the compass at different times, or the difference in variation of different compasses. Marked and known lines designating the boundaries of land, indicating the original survey, cannot be thus disregarded.

If the original survey was made upon a wrong or assumed variation, or no variation at all, and its lines and boundaries are obvious, they are nevertheless the true boundaries of the patentee and those holding under him; and the law will not submit such boundaries to any other test, however scientific in the abstract.

If, therefore, the known township lines constituting the boundary of the section in question on one side, indicated a variation different from that assumed by the county surveyor, it was his duty to have followed the directions of the known lines. For in no other

way could he have ascertained the true line of division which was sought to be known by these parties.

Any other rule would destroy all existing surveys and boundary lines, and establish in their stead others corresponding with the changes in magnetic variation from time to time.

Let the decree be reversed, and cause remanded for further proceedings.