BOYD *v.* DURRETT.

Jan. 19, 1953

No. 38580 16 Adv. S. 3 62 So. 2d 319

*Richard B. Booth,* for appellant.

*Thomas F. Paine,* for appellee.

Kyle, J.

T. Frank Durrett, as complainant, filed a bill of complaint in the chancery court of Monroe County against W. W. Boyd, as defendant, to establish the true boundary lines between lands owned by the complainant and adjoining lands owned by the defendant, all of which were fully described in the bill of complaint. The complainant also alleged in his bill that the defendant had gone on the lands of the complainant and had cut valuable timber, and the complainant asked for damages for the alleged trespass and also for the statutory penalty for the wrongful cutting of the timber.

The chancellor, after hearing the testimony, rendered a memorandum opinion in favor of complainant and entered a decree establishing the boundary lines according to the survey made by the complainant's surveyor, B. G. Brigance; and the chancellor awarded damages to the complainant in the sum of $5,400, which was the amount fixed as the value of the timber cut by the defendant on the lands owned by the complainant. The chancellor denied the complainant's claim for the statutory penalty for the wrongful cutting of the trees. From that decree the defendant prosecutes this appeal.

The lands owned by the respective parties are timbered lands, and no question of adverse possession is involved in the boundary line controversy.

The record on this appeal shows the following facts, which are practically undisputed:

Both Durrett and Boyd were the owners of valuable tracts of timber lands in Monroe County. Durrett was the owner of all of Section 30, Township 13, Range 17 West, except the South Half of the Southwest Quarter and the Southwest Quarter of the Southeast Quarter of

said Section; and Durrett was also the owner of the West Half of the Northwest Quarter of Section 32, in the same Township and Range. Boyd was the owner of the Southwest Quarter of the Southeast Quarter of Section 30, and the Northeast Quarter of the Northeast Quarter of Section 31, in Township 13, Range 17 West, and also the 40-acre tract of land described as the Northeast Quarter of the Northeast Quarter of Section 25, Township 13, Range 18 West. Boyd's 40-acre tract of land described as the Southwest Quarter of the Southeast Quarter of Section 30 was bounded on the north and east by Durrett's lands in Section 30; and Boyd's 40-acre tract of land described as the Northeast Quarter of the Northeast Quarter of Section 31, was bounded on the north by Durrett's land in Section 30, and on the east by Durrett's land in Section 32. Boyd's 40-acre tract of land in the Northeast Quarter of Section 25, Township 13, Range 18 West, was separated from Durrett's land in the Northwest Quarter of Section 30, Township 13, Range 17 West, by the range line between Ranges 17 and 18.

Boyd was engaged in the sawmill business, and Durrett was engaged in the lumber business. In 1947 Boyd decided to cut the timber on the tracts of land owned by him, which adjoined the above described tracts of land owned by Durrett; and Boyd employed J. F. Cox, the county surveyor, to run the lines for him and notified Durrett that Cox would run the lines for him. Durrett requested his son-in-law, Otis Cowan, to accompany the surveying party while the lines were being run; but Durrett took no part otherwise in the survey. Cox ran the lines during the month of December, 1947. Cowan was present during the two days the lines were being run, and reported the facts to his father-in-law. Neither Durrett nor Cowan made any complaint about the location of the lines according to Cox's survey until sometime during the spring of 1950, when Boyd started to

cut the timber on the 40-acre tract of land owned by him in the northeast corner of the Northeast Quarter of Section 25, Township 13, Range 18 West. Boyd's timber cutters cut the timber up to the range line, as established by Cox's survey, whereupon Durrett made complaint and sent for Cox; and an argument ensued between Durrett and Boyd concerning the location of the true line between Boyd's 40-acre tract and Durrett's land in the Northwest Quarter of Section 30. Boyd then advised Durrett that he would be willing to have another surveyor run the line, provided Durrett would agree to have the line run immediately. But Durrett did not agree to this; and Boyd heard nothing more from Durrett about the matter until January, 1951, when Boyd resumed his timber cutting operations on the 40-acre tract, and Durrett's son had Boyd arrested on a charge of trespassing on Durrett's land. The case was tried in a justice of the peace court and Boyd was acquitted.

In the meantime, Durrett had employed B. G. Brigance, a qualified engineer and surveyor of long experience, who resided in another county, to run the lines for him. Brigance made his survey sometime during the latter part of the year 1950. The only line in dispute at the time Brigance was employed by Durrett to make the survey was the range line between Boyd's 40-acre tract in the northeast corner of the Northeast Quarter of Section 25, Township 13, Range 18 West, and Durrett's land lying immediately east of that 40-acre tract. But, when Brigance's survey had been completed, it showed a substantial difference in the location of the other lines which Cox had run. Brigance's survey established the range line approximately 93 feet west of the line marked out by Cox; and Brigance's survey showed that Boyd had encroached upon Durrett's lands to the extent of approximately seven acres in all.

Much testimony was taken during the hearing before the chancellor. But the most important testimony was

that of the two surveyors, B. G. Brigance, who testified as a witness for Durrett, and J. F. Cox, who testified as a witness for Boyd.

Inasmuch as Cox's survey was made in December, 1947, while Brigance's survey was made two years later, we shall give a summary of Cox's testimony first, although Brigance testified first as a witness for the complainant during the trial.

Cox testified that he had been employed by Boyd to run the lines for him in 1947, and that he had used a transit, a compass and a 100-ft. tape in making the survey, and that the lines were run by magnetic variation. He stated that he had used the field notes and distances shown by the records in the chancery clerk's office. He stated that he began at the northwest corner of the Southwest Quarter of the Southeast Quarter of Section 30, which was the northeast corner of Derwood Boyd's 80-acre tract (the South Half of the Southwest Quarter of Section 30). Cox stated that he had made a survey of Derwood Boyd's 80-acre tract in 1945; and for that reason he used Derwood Boyd's northeast corner as a starting point. Cox stated that he ran the lines between the 40-acre tract of land owned by W. W. Boyd in Section 30 and the land owned by Durrett in Section 30, and the line between the land owned by W. W. Boyd in Section 31 and the land owned by Durrett in Section 32; and that he then ran the line from the northwest corner of Derwood Boyd's 80-acre tract to the northwest corner of Section 30. This last mentioned line was a part of the range line which separated W. W. Boyd's 40-acre tract in the Northeast Quarter of Section 25, Township 13, Range 18 West, from Durrett's land in the Northwest Quarter of Section 30, Township 13, Range 17 West.

Brigance testified that he had made his survey for Durrett during the year 1950. He stated that he had obtained copies of the field notes covering the original

government survey from the office of the chancery clerk of Monroe County, but had found these notes incomplete; and that he had then obtained from the office of the State Land Commissioner, at Jackson, Mississippi, copies of other field notes found among the records of that office, which contained references to streams not shown in the field notes found in the office of the chancery clerk. He stated that the original government survey had been made about 1830, and that none of the trees referred to in the field notes were still standing. He stated that he first ran reconnaissance lines with the aid of a transit and a magnetic needle, and that he then undertook to tie these lines into the stream references contained in the field notes which he had obtained from the State Land Office. He stated that in his opinion the streams referred to in the field notes had not changed their courses since the government survey was made. By the use of the stream references contained in the field notes he succeeded in establishing the southeast corner of Section 30 and the northwest corner of Section 30. With these two points definitely established, he was able to relocate the range line between Ranges 17 and 18, as that line was projected northwardly and southwardly from the northwest corner of Section 30.

Brigance stated that he found at the northwest corner of Section 30 an old pine knot, which had been pointed out to him by Durrett as a recognized corner marker. He stated that there were old fence scars and blazes on trees along the range line running northwardly from the old pine knot, which indicated a recognized boundary line between Section 19, Township 13, Range 17 West, and Section 24, Township 13, Range 18 West, and he identified several photographs which were offered in evidence to show the markings along this line.

Brigance stated that, after he had set up what he regarded as the true position of the line, he took a solar observation and determined the true azimuth in regard

to the true position of the line, which automatically gave him the true bearing. On cross examination Brigance stated that the range line as established by him had a bearing of south 0 degrees 6 minutes east or north 0 degrees 6 minutes west. He stated that he did not use a magnetic needle to run by, and that he used a stadia measure instead of a chain for the purpose of measuring distances. He admitted that he had made little effort to find out from local residents anything about established corners or recognized markers.

Several witnesses testified for the complainant concerning the location of the range line running northwardly from the old pine knot referred to above. Huey Goodman and Mann Goodman, who owned land in Section 19, lying immediately north of Section 30, testified that they had employed Cox to run the lines of their 80-acre tract in 1946 or 1947, and that they had pointed out to Cox the old pine knot, "where we all corner." Cooper Cantrell testified that he owned land in Section 24, Township 13, Range 18 West, which lies immediately west of Section 19, Township 13, Range 17 West, and that the range line constituted his east boundary line. Cantrell stated that the range line had been run by Gordon Green, the county surveyor, about forty years before the date of the trial, and that the line thus established had been recognized as the true line since that time, and that fences had been erected along that line by the abutting landowners. A. D. Simms testified that he had known the pine knot as the corner of the four sections since 1898.

Durrett, testifying as a witness in his own behalf, stated that he had known the land in Section 30 since 1905, and that during all that time the pine knot referred to above had been recognized as the northwest corner of the Section. On cross-examination Durrett admitted, however, that Brigance's range line running southwardly from the pine knot to the northwest corner

of Derwood Boyd's 80-acre tract in the Southwest Quarter of Section 30 had cut off a strip of an open field which belonged to the G. C. Boyd place lying west of the range line; and he admitted that the line that Brigance had run between his land and Derwood Boyd's 80-acre tract ran through the dining room of Derwood Boyd's dwelling house, which had been erected by Derwood Boyd's grandfather. Durrett admitted that he had waited more than two years after Cox had completed his survey before making complaint to W. W. Boyd about Cox's survey or the location of the line between Durrett's land in the Northwest Quarter of Section 30 and Boyd's 40-acre tract in the Northeast Quarter of Section 25; and he admitted that he had never expressed any dissatisfaction with the line run by Cox south of the railroad until after Brigance had made his survey.

The chancellor found that there was no agreement between Boyd and Durrett to have the lines run by the county surveyor, and that Durrett was not bound by the Cox survey. The chancellor found that Cox in making his survey did not attempt to locate any government corner, but merely started at a corner which had been recognized by the landowners in that particular area and assumed to be a correctly established corner, and that the lines run by Cox had not been located with such accuracy as to warrant the approval of Cox's survey. The chancellor found that the lines run by Brigance, which checked with the stream references contained in the field notes obtained from the State Land Office, had been correctly located according to the government survey; and the chancellor entered a decree establishing those lines as the true boundary lines between the lands owned by Boyd and the lands owned by Durrett.

The main point argued by the appellant's attorney on this appeal is that the chancellor erred in his finding that the lines established by the Brigance survey had

been correctly established. The appellant contends that the original survey of the lands had been made by the method of magnetic declination, with the aid of a compass and needle, which was the only method of surveying in use at the time of the original survey, and that the lines established by the original survey could be reestablished only by that method; that according to Brigance's own testimony he had determined the true bearing of the lines not by the method of magnetic declination but by solar observation; and that, for that reason, if for no other, the court should have rejected Brigance's survey, and should have approved Cox's survey.

After a careful study of the record, however, we think that the findings of the chancellor are supported by the weight of the evidence; and we are unable to say that the lines located by Brigance were not correctly located as the true lines established by the original survey.

The general rule relating to the location or reestablishment of boundary lines, where no question of adverse possession is involved, is stated in 8 Am. Jur. p. 792, Boundaries, par. 66, as follows:

"In locating and running the boundary lines of lots or tracts of land of private owners, reference is to be had to the calls in the grant and to the field notes carried into the grant or the map or plan with reference to which the conveyance was made; and if there is no ambiguity the land must be located and the lines run according to the description of the conveyance. * * * Accordingly, in restoring lost lines and corners, visible and actual landmarks are to be preferred, but if they cannot be ascertained resort must then be had to courses and distances. All lands are supposed to be actually surveyed and the intention of the grant is to convey the land according to the actual survey. It is, therefore, said that the real purpose of the inquiry is to follow the steps of the surveyor on the ground, and all calls will be construed with this in mind."

In the early case of May v. Baskin, 12 Smedes & M. 428, this Court said: "The original survey fixed the rights of the parties. The government sold the land according to that survey, and conveyed it to the purchasers. No line could be afterwards run without the consent of all interested, which would vary the rights thus acquired."

In the case of Bonney v. McLeod, 38 Miss. 393, the Court held that the true boundaries of land once owned by the United States are the lines established by the survey made by the government, under which it was sold; and wherever these lines are obvious, they must be followed, notwithstanding the government survey may have been made upon an assumed, or a wrong magnetic variation.

 Cox and Brigance both testified that the tree monuments referred to in the field notes of the original survey had long since disappeared. Only the streams which were referred to in the field notes obtained from the State Land Office remained as actual landmarks to aid the surveyor in his effort to relocate the lines run by the government surveyors; and these streams were not referred to in the field notes found in the chancery clerk's office, which Cox used in making his survey.

 Cox admitted that he did not locate any original government corners when he made his survey, and that he could not swear positively that the corners shown on his map were the true government corners. In view of these facts it cannot be said that the chancellor was in error in holding that the lines run by Cox had not been run with such degree of certainty and accuracy as to warrant the approval of Cox's survey.

In the case of Burton v. Buttler, 107 Miss. 344, 65 So. 459, which was an action in ejectment, wherein the appellee had relied on a survey to establish the dividing line between his land and the land of the appellant, the Court in reversing a judgment for the plaintiff said:

"From the testimony of the surveyor, it does not appear that he located an established corner or monument of the original survey made by the United States surveyor as a starting point in his survey. It cannot be said that he had a sufficiently established corner or place from which to run his lines. The line, therefore, run by him was not with such degree of certainty and accuracy as to constitute it as the true and correct dividing line between the properties of appellant and appellee. Newman v. Foster, 3 How. 383, 34 Am. Dec. 98; May v. Baskin, 12 Smedes & M. 428; Bonney v. McLeod, 38 Miss. 393; Reinert v. Brunt, 42 Kan. 43, 21 Pac. 807.''

Brigance testified that the stream monuments referred to in the field notes obtained from the State Land Office enabled him to establish definitely the two section corners mentioned above, and that the corners thus established checked with the streams on the ground. The northwest corner of Section 30 was a point on the range line, and as located by Brigance checked with the range line running northwardly between Section 19, Township 13, Range 17 West, and Section 24, Township 13, Range 18 West, which had been recognized by abutting landowners for many years. With the two corners of Section 30 thus definitely located, Brigance testified that he was able to relocate the range line running southwardly from the northwest corner of Section 30 to the northwest corner of Derwood Boyd's 80-acre tract.

Brigance stated that it was not necessary for him to make the solar observations to determine the correctness of his lines, but that the solar observations were made to establish the true bearings of the lines for future reference only. He admitted that the old surveys had been made by the use of a compass, with magnetic variations; but he denied that it was necessary to make use of magnetic variations for the purpose of finding the lines established by the old surveyors. He stated that a solar observation provided a safer method for determining the

true location of lines than the use of the magnetic needle.

We find nothing in the record to discredit the accuracy of Brigance's survey. It is true that the range line which he had established south of the Frisco railroad right-of-way ran through the edge of an open field which belonged to the G. C. Boyd place lying west of the range line, and that the line which he had run between Durrett's land in Section 30 and Derwood Boyd's 80-acre tract ran several feet south of the dividing line which had been recognized by the landowners since the time of Derwood Boyd's grandfather. But these variations may signify mistakes on the part of the landowners in that immediate area as to the true location of the section corners established by the original survey. No attempt was made by the appellant to show that the section corners or the range line established by Brigance's survey did not check with the stream monuments referred to in the field notes obtained from the State Land Office or other established markers, or with the courses and distances set forth in the field notes. The fact that the surveyor made solar observations to establish the true bearings of the lines for future reference, or that he used a stadia for the measurement of distances, instead of a chain, did not invalidate the survey. The question which the chancellor had to decide was, whether the lines established by Brigance's survey had been correctly established according to the original survey.

We think that the evidence was sufficient to justify the findings of the chancellor, and the decree of the lower court is therefore affirmed.

Affirmed.

*McGehee, C. J.*, and *Hall, Holmes*, and *Arrington, JJ.*, concur.